**MIDWEST OF CANNON FALLS, INC.,**
Plaintiff/Cross–Appellant,

v.

**The UNITED STATES, Defendant–Appellant.**

Nos. 96–1271, 96–1279.

United States Court of Appeals, Federal Circuit.

Aug. 14, 1997.

Joel K. Simon, Serko & Simon, New York City, argued for Plaintiff/Cross–Appellant. With him on the brief were Arlen T. Epstein and Leibert L. Greenberg.

Mikki Graves Walser, Attorney, Commercial Litigation Branch Civil Division, Department of Justice, International Trade Field Office, New York City, argued for Defendant–Appellant. With her on the brief was Joseph I. Liebman, Attorney in Charge. Also with her on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director, Department of Justice, Washington, DC. Of counsel on the brief was Sheryl A. French, International Trade Field Office, New York City.

Before RICH, NEWMAN, and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

The United States (the government) appeals from the judgment of the United States Court of International Trade holding that the Customs Service (Customs) incorrectly classified 25 of the 29 imported items. Midwest of Cannon Falls, Inc. (Midwest) cross-appeals on the classification of two of the four items on which the trial court ruled in favor of the government. We hold in favor of Midwest, affirming the trial court's judgment with respect to the 25 items appealed by the United States and reversing with respect to the two items cross-appealed by Midwest.

I

Midwest imports the following 29 holiday-related items for resale to retailers: (1) Nutcrackers (Santa, soldier, king, presidents, athletes and professionals); (2) Wooden pull toy (ice skater); (3) Toy smoker (Santa); (4) Porcelain and fabric mâché Santa; (5) Fabric mâché Mrs. Claus; (6) Cast iron stocking hangers (Santa); (7) Cast iron stocking hangers (Santa with lamb); (8) Cast iron stocking hangers (Christmas elf); (9) Cast iron stocking hangers (stacked animal); (10) Cast iron stocking hangers (cargo car); (11) Terra cotta turkey container; (12) Earthenware rabbit with carrot; (13) Heart-shaped metal wreath; (14) Jack-o'-lantern earthenware mug; (15) Jack-o'-lantern earthenware pitcher; (16) Christmas water globe; (17) Easter water globe; (18) Santa with chimney smoker; (19) Fabric mâché Santa with bag of toys; (20) Fabric mâché Scanda Klaus; (21) Fabric mâché MacNicholas; (22) Porcelain Santa with light-up tree; (23) Resin figures (hooded Santa roly-poly); (24) Resin figures (figures decorating tree); (25) Resin figures (Santa in sleigh); (26) Resin figures (Santa with tree); (27) Resin figures (old-fashioned Santa figure); (28) Resin figures (Santa with deer); and (29) Resin figures (Santa sewing an American flag).

All of the above items are advertised and sold to consumers before the particular holiday with which they are associated, the vast majority being sold during the Christmas season. They were entered in 1990 and 1991 and liquidated in 1991. Customs classified the products variously as earthenware ornamental ceramic articles, dolls, glassware, other tableware and kitchenware articles, other ornaments of base metal, and other articles of plastics.

Midwest claims that all of the items should be classified as festive, carnival or other entertainment articles under heading 9505 of the Harmonized Tariff Schedule of the United States (HTSUS). In particular, it argues that the Christmas-related items should be classified as Christmas ornaments or as other articles for Christmas festivities under subheading 9505.10, and that the items related to Halloween, Thanksgiving, Valentine's Day, and Easter should be classified as other festive articles under subheading 9505.90.

Of the 29 items, the trial court held in favor of Midwest on all except for four items (items 11, 12, 14 and 15). The United States appeals the 25 items on which Midwest prevailed, and Midwest cross-appeals two of the four items on which the United States prevailed—items 14 (jack-o'-lantern earthenware mug) and 15 (jack-o'-lantern earthenware pitcher). Items 11 and 12 are not on appeal.

II

A classification decision, ultimately, is a question of law based on two underlying

steps. *Universal Elecs. Inc. v. United States*, 112 F.3d 488, 491 (Fed.Cir.1997). The first step is to determine the scope of the tariff classification provision. This step, being a question of law, is reviewed *de novo* by this court. *Totes, Inc. v. United States*, 69 F.3d 495, 497–98 (Fed.Cir.1995). The second step asks whether the items at issue come within a particular tariff provision, as properly interpreted, and is a question of fact. *Id.* at 498. Because the government's primary argument here centers around the legal scope of the classification term "Christmas ornament," we independently review the trial court's and Customs' decisions. *See Universal Elecs.*, 112 F.3d at 493 ("On questions of law, we defer to neither Customs' nor the Court of International Trade's interpretations; we decide such questions afresh."); *Rollerblade, Inc. v. United States*, 112 F.3d 481, 484 (Fed.Cir.1997) ("[N]o deference attaches to Customs' classification decisions ... where there are no disputed issues of material fact.").

## III

This case raises the following three principal issues: (1) whether the trial court correctly rejected the government's argument that the items at issue are categorically excluded from classification as "festive articles" under heading 9505, HTSUS; (2) whether the trial court correctly held that "Christmas ornaments" under subheading 9505.10.25 are not limited to articles that (a) hang primarily from a tree, (b) are inexpensive, and (c) are traditionally associated with Christmas; and (3) whether the trial court correctly held that festive articles with a utilitarian function are categorically excluded from classification under heading 9505. As explained in turn below, we affirm the trial court's decision as to the first two issues and reverse as to the last issue.

## A

■ The government's lead argument is that most of the items at issue are categorically excluded from classification under heading 9505, HTSUS.[1] We begin our analysis with the language of the pertinent HTSUS provisions:

| | |
|---|---|
| 9505, HTSUS | Festive, carnival or other entertainment articles, including magic tricks and practical joke articles; parts and accessories thereof: |
| 9505.10 | Articles for Christmas festivities and parts and accessories thereof: |
| | Christmas ornaments: |
| 9505.10.10 | Of glass |
| | Other: |
| 9505.10.15 | Of wood |
| 9505.10.25 | Other |
| 9505.10.30 | Nativity scenes and figures thereof |
| | Other: |
| 9505.10.40 | Of plastics |
| 9505.10.50 | Other |
| 9505.90 | Other: |
| 9505.90.20 | Magic tricks and practical joke articles; parts and accessories thereof |
| 9505.90.40 | Confetti, paper spirals or streamers, party favors and noisemakers; parts and accessories thereof |
| 9505.90.60 | Other |

---

1. The government argues that most of the items at issue categorically cannot be classified under heading 9505. With respect to those items, the government relies on its principal arguments and does not assert the doctrine of relative specificity. This opinion addresses the government's principal arguments only and adopts the trial court's reasoning with respect to the items for which the government raises the doctrine of relative specificity.

The government argues that heading 9505, HTSUS ("Festive, carnival or other entertainment articles") is by its plain language limited to "entertainment" articles, which the government further defines as articles for "amusement or merriment." The government focuses on the phrase "or *other* entertainment articles." It argues that the term "other entertainment" operates to modify the preceding words, "festive and carnival." The government then concludes that all of the articles under heading 9505, including festive and carnival articles, must be limited to "entertainment articles." The government contends that none of the imported items are entertainment items (*i.e.,* used for amusement or merriment), and consequently, none can be classified under heading 9505.

The government's argument fails for two reasons. First, it is somewhat unclear what the government means by articles for "entertainment, amusement or merriment" because the imported items (*e.g.,* various Santa figures) are at least as "entertaining" as Christmas *tree* ornaments that the government admits belong under heading 9505. As far as the degree of "entertainment, amusement or merriment" is concerned, we perceive no appreciable difference between the two, each of which exists in order to enhance the state of merriment at the yuletide holiday season. Thus, to the extent Christmas tree ornaments are "entertainment" articles within the meaning of heading 9505 as advocated by the government, so are the imported items at issue. Second, we note that heading 9505 includes nativity scenes and figures thereof. *See* heading 9505.10.30, HTSUS. Thus, even under the government's own argument, heading 9505 covers a range of products spanning Christmas tree ornaments to nativity scenes. The imported Christmas ornaments here are at least as "entertaining" as the nativity scenes. In sum, all of the items at issue are used in celebration of and for entertainment on a joyous holiday, and they are all *prima facie* classifiable as "festive articles" under heading 9505.

### B

The government next seeks to impose three requirements to the term, "Christmas ornaments," namely that such articles must: (a) hang primarily from a tree; (b) be inexpensive; and (c) be traditionally associated with Christmas. We agree with the trial court that the requirements advocated by the government find no basis either in the plain language of the HTSUS or in any other controlling authority.

### 1

■ First, the government argues that the term "Christmas ornament" is often understood by consumers and industry participants to refer to "Christmas tree ornament" and that the classification term should be limited accordingly. The trial court acknowledged that evidence adduced at trial demonstrated that the term was often understood as limited to "Christmas tree ornament," but the court found that "the evidence failed to demonstrate that this interpretation was consistent." Having reviewed the trial record relied on by the government, we too acknowledge that evidence tended to show that consumers and industry participants often would think of "Christmas tree ornaments" when asked of "Christmas ornaments." However, the testimony of various witnesses was hardly conclusive on the meaning of "ornament" and was conditioned by such qualifiers as "probably," "in most cases," "the majority of our customer base," and "I can't give you a good definition."

Although the testimony of consumers and industry participants is probative, this court is more persuaded by the action taken by Congress itself on the issue: when Congress converted from the Tariff Schedules of the United States (TSUS) to the HTSUS, the relevant tariff provision was changed from "Christmas tree ornaments" to "Christmas ornaments." *See* item 772.95, TSUS ("Christmas tree ornaments"). The government argues that "the word 'tree' was unnecessary given the common and commercial understanding of 'Christmas Ornaments' as meaning the class or kind of ornament that is known as 'Christmas Tree Ornaments.'" We disagree. The deletion of the term

"tree," we must presume, was intentional on the part of Congress. If Congress intended to retain the existing scope, as the government argues, we do not think that Congress would have substituted a relatively straightforward term (Christmas tree ornament) with a term (Christmas ornament) that is, at least, arguably broader than the original term. *See Bentkamp v. United States,* 40 C.C.P.A. 70, 77 (1952) ("Ordinarily, where the essential word that supports a construction contended for appeared in an earlier act and has been omitted in a subsequent one by Congress, the omitted word may not be restored in the terms of the law by judicial construction. Such a change of legislative language is presumed to evidence an intent on the part of Congress to effect a change in meaning." (citation omitted)). The government's argument that the terms "Christmas tree ornament" and "Christmas ornament" are interchangeable is further undercut by the fact that "Christmas candles" and "Christmas *tree* candles" are referred to separately in the Explanatory Notes to heading 9505. *See* Explanatory Notes 95.05(B)(b). Congress thus used the term "Christmas *tree*" when it meant it, and vice versa.

■ The government appears to argue in the alternative that the term Christmas ornament is indeed broader and includes "hanging" ornaments other than Christmas tree ornaments—but is still limited only to Christmas ornaments that are *hung* from archways, doorways, ceilings, fixtures, window shades, and so forth during the Christmas season. Hence, the government argues that because the imported items at issue are not meant to be hung, they cannot be Christmas ornaments. In support of this argument, the government primarily relies on the examples in the Explanatory Notes to heading 9505, most of which hang from a tree or elsewhere. The examples in the Explanatory Notes, however, cannot control here, particularly in light of the congressional omission of the word "tree." Absent a clearer showing of congressional intent, we refuse to import incidental characteristics of the examples in the Explanatory Notes into the headings of

the HTSUS. *See Marubeni Am. Corp. v. United States,* 35 F.3d 530, 535 n. 3 (Fed.Cir. 1994) ("Explanatory Notes are only instructive and are not dispositive or binding.").

2

■ The other two requirements that the government seeks to attribute to the term "Christmas ornament"—that they be inexpensive and traditionally associated with Christmas—similarly are based on the examples found in the Explanatory Notes to heading 9505. Again, we refuse to import such extraneous limitations that are not based on the actual language of the headings. Indeed, the government's argument on this point, like its apparent assertion that Christmas ornaments at issue do not provide merriment, finds no home in reality. Ornaments of delicate glass, for example, quite common these days, are not "inexpensive," and ornaments showing the logos of favorite sports teams, for example, also quite common these days, hardly depict scenes traditionally associated with Christmas, such as those showing winter scenes, angels, presents, candy canes, and the like. In addition, we fully embrace the trial court's notion that absent legislative intent to the contrary, the term "Christmas ornament" should be construed to embrace evolving consumer tastes and not be limited to traditional Christmas themes. *See Atlas Copco N. Am., Inc. v. United States,* 837 F.Supp. 423, 426–27 (Ct. Int'l Trade 1993) ("It is conducive to the steady and predictable development of the tariff law that inventive improvements which continue to be known by a traditional name not be excluded from a class simply because of their new physical characteristics.").

C

■ We now turn to Midwest's cross-appeal with respect to earthenware jack-o'-lantern mugs and pitchers. The trial court held as a matter of law that when an item with a particular ornamentation (such as the jack-o'-lantern mugs and pitchers here) serves a utilitarian function and the function is served

"no less efficiently than their plainer counterparts," it must be classified under the utilitarian article provision, and cannot *prima facie* be classified under the "other festive articles" provision of heading 9505. Accordingly, the mugs were classified as "mugs and other steins of ceramic tableware, kitchenware, and other household articles" under subheading 6912.00.44, HTSUS. The pitchers were classified as "other ceramic tableware, kitchenware, and other household articles" under subheading 6912.00.48, HTSUS.

Note 2(ij) to chapter 69 states that the chapter does not cover "Articles of chapter 95." Accordingly, the issue here is whether the items at issue *prima facie* are classifiable under heading 9505. If so, then pursuant to note 2(ij), chapter 69, the items cannot fall under chapter 69 and must be classified under chapter 95. The trial court's holding that the mugs and pitchers at issue are not *prima facie* classifiable under heading 9505 was largely based on the Explanatory Notes to chapter 95. The court reasoned:

> Although the motif of the mug and plate associate them with Halloween, heading 9505 nevertheless appears ill-suited to these particular items. The examples of items coming under heading 9505 as described by the Explanatory Notes are all non-functional items: false ears, cardboard trumpets, artificial snow, etc. Explanatory Notes, 95.05(A)(1). In addition, the HTSUS provides heading 6913 as the appropriate heading for decorative tableware. The Explanatory Notes do not contemplate plaintiff's proposed classification as a possible classification for tableware, functional or decorative. *See* Explanatory Notes, 69.13(B).

Although the examples in the Explanatory Notes are probative and sometimes illuminating, we will not employ their limiting characteristics to narrow the language of the classification heading itself. Nothing from the pertinent subheading 9505.90.60—"other festive, carnival or other entertainment articles"—limits 9505.90.60 to only "non-utilitarian" items. Given that the jack-o'-lantern is a symbol so closely associated with Halloween, and that the items will be displayed and used by the consumer only during Halloween, we conclude that the mugs and pitchers at issue *prima facie* are "other festive articles" under subheading 9505.90.60. As discussed above, note 2(ij), chapter 69, excludes articles of heading 9505 from being classified under chapter 69 and obviates our need to decide whether the items also *prima facie* fall under the alternative headings 6912 ("Ceramic tableware") and 6913 ("Other ornamental ceramic articles"). *See* Note 2(ij), Chapter 69 ("This chapter does not cover: (ij) Articles of chapter 95...."). Accordingly, the jack-o'-lantern mugs and pitchers must be classified as "other festive articles" under subheading 9505.90.60.

## IV

For the foregoing reasons and the reasoning provided by the trial court with respect to individual items, we affirm the trial court's judgment with respect to the 25 items appealed by the government and reverse with respect to the two items cross-appealed by Midwest, as follows:

9505.10.15  Christmas ornaments of wood
    (1)  Nutcrackers (Santa, soldier, king, presidents, athletes and professionals)
    (2)  Wooden pull toy (ice skater)
    (3)  Toy smoker (Santa)
    (18)  Santa with chimney smoker

9505.10.25  Other Christmas ornaments
    (4)  Porcelain and fabric mâché Santa
    (5)  Fabric mâché Mrs. Claus
    (6)  Cast iron stocking hangers (Santa)
    (7)  Cast iron stocking hangers (Santa with lamb)
    (8)  Cast iron stocking hangers (Christmas elf)
    (9)  Cast iron stocking hangers (stacked animal)
    (10)  Cast iron stocking hangers (cargo car)
    (16)  Christmas water globe
    (19)  Fabric mâché Santa with bag of toys
    (20)  Fabric mâché Scanda Klaus
    (21)  Fabric mâché MacNicholas
    (22)  Porcelain Santa with light-up tree
    (23)  Resin figures (hooded Santa roly-poly)
    (24)  Resin figures (figures decorating tree)
    (25)  Resin figures (Santa in sleigh)
    (26)  Resin figures (Santa with tree)
    (27)  Resin figures (old-fashioned Santa figure)
    (28)  Resin figures (Santa with deer)
    (29)  Resin figures (Santa sewing an American flag)

9505.90.60  Other festive articles
    (13)  Heart-shaped metal wreath
    (14)  Jack-o'-lantern earthenware mug
    (15)  Jack-o'-lantern earthenware pitcher
    (17)  Easter water globe

No costs.

*AFFIRMED–IN–PART AND RE-
VERSED–IN–PART.*