Slip Op. 01-63


**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  RICHARD W. GOLDBERG, SENIOR JUDGE**

)))))))))))))))))))))))))))))))))),
                                      *
PARK B. SMITH, LTD.,                  *
                                      *
                 Plaintiff,           *
                                      *
           v.                         *
                                      *   Court No. 96-02-00344
UNITED STATES,                        *
                                      *
                 Defendant.           *
                                      *
)))))))))))))))))))))))))))))))))))))-


[Judgment in part for Plaintiff, judgment in part for Defendant.]


                          Dated:   May 29, 2001


     Coudert Brothers (Steven H. Becker, Chris E. Pey, and Scott D. Shauf), for plaintiff.

     Stuart E. Schiffer, Acting Assistant Attorney General; Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Mikki Graves Walser); Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service (Edward N. Maurer), of Counsel, for defendant.


                        **O P I N I O N**


**GOLDBERG, Senior Judge:**  This matter is before the Court following trial de novo.  It involves the proper classification of approximately sixty-three items typically considered holiday table linens in the textile trade.  The case requires the Court to interpret the scope of the term "festive articles" as it

appears in heading 9505 of the Harmonized Tariff Schedules of the United States ("HTSUS"). Upon review of the evidence presented at trial, the Court finds in favor of the plaintiff in part, and in favor of the defendant in part. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1581(a) (1994).

**BACKGROUND**

Park B Smith, Ltd., ("PBS") imports hand woven cotton textile merchandise from India and then resells the merchandise to retailers. The merchandise at issue here includes dhurries, placemats, napkins and table runners. Generally, these items are advertised and sold only to consumers prior to the particular holiday with which they are associated. The majority of the items were sold during the Christmas season.

The merchandise at issue was entered in 1994 and 1995. The United States Customs Service ("Customs") classified the dhurries under subheading 5702.99.1010, HTSUS (dutiable at 7.7% or 7.6% _ad valorem_, depending on which year the entry was made); the placemats and tablerunners under subheading 6302.51.40 HTSUS (dutiable at 5.5% or 5.4% _ad valorem_); and the napkins under subheading 6302.51.20 (dutiable at 5.5% or 5.4% _ad valorem_).

PBS claims that all of the merchandise at issue should have been classified as festive articles, and thus duty free, under subheading 9505 of the HTSUS.

**DISCUSSION**

I.   STANDARD OF REVIEW

Customs's tariff classification decisions are presumed to be

correct, and the importer has the burden of proving otherwise. See 28 U.S.C. § 2639(a)(1)(1994). To determine whether the importer has overcome this presumption, the Court must consider whether Customs's classification is correct. This evaluation is conducted both independently and in comparison with the importer's proposed alternative. See Jarvis Clark Co. v. United States, 2 Fed. Cir. (T)70, 75, 733 F.2d 873, 878, reh'g denied, 2 Fed. Cir. (T) 97, 739 F.2d 628 (1984).

## II.    CUSTOMS'S CLASSIFICATION

At trial, Customs argued that the merchandise at issue was properly classified under subheadings 5702.99.1010, 6302.51.40, 6302.51.20, HTSUS. PBS argued that even if the merchandise was prima facie classifiable under the aforementioned subheadings, it was also prima facie classifiable under the festive articles provision of the HTSUS B heading 9505. PBS further claimed that Section XI Note 1(t), HTSUS, excludes all articles of chapter 95 from being classified under Section XI. See Midwest of Cannon Falls, Inc. v. United States, 20 CIT 123 (CIT, 1996), aff'd in part, rev'd in part, 122 F.3d 1423, 1429 (Fed. Cir. 1997). Section XI, HTSUS includes chapters 50 - 63. Thus, PBS argued, the merchandise was properly classifiable only under heading 9505.

Both parties agree that the merchandise was prima facie classifiable under subheadings 5702.99.1010, 6302.51.40, and 6302.51.20, HTSUS. See Pl.'s Pretrial Mem. of Law, at 6; Def.'s Pretrial Mem. of Law, at 10-15. Thus, the questions before the

Court are whether PBS has overcome Customs's presumption of correctness and proven that the merchandise is also classifiable under heading 9505, and if so, whether Section XI Note 1(t) operates to compel a classification under heading 9505, HTSUS.

III.    PRIMA FACIE CLASSIFICATION AS "FESTIVE ARTICLE"
        UNDER 9505, HTSUS.

At trial, Customs argued that the merchandise at issue was not prima facie classifiable as festive articles because the general scope and explanatory notes of Heading 9505 indicate that "Congress did not intend to extend the scope of this provision to include all manner of possibly festive articles, i.e., rugs, placemats, napkins, and table runners."  <u>See</u> Def.'s Pretrial Mem. of Law, at 17.  Further, Customs claimed that the Federal Circuit's opinion in <u>Midwest</u> should be constrained to three-dimensional objects, and thus not apply to any of the two-dimensional objects at issue here.[1]

PBS, on the other hand, argued that the merchandise was prima facie classifiable as festive articles because, as the merchandise in <u>Midwest</u>, the merchandise at issue was designed,

---

[1]Customs even went as far as to publish and make available to the public an Advanced Level Informed Compliance Publication of the U.S. Customs Service entitled "What Every Member of the Trade Community Should Know About: CLASSIFICATION OF FESTIVE ARTICLES as a result of the <u>Midwest of Cannon Falls</u> Court Case (November 1997)." <u>at</u> http://www.customs.ustreas.gov/impoexpo/impoexpo.html.  This article, in the Court's opinion, is an inexcusably irresponsible attempt by Customs to present to the public its two-dimensional/three-dimensional distinction theory as the current state of the law after <u>Midwest</u>.  The Court reminds Customs that it is the purview of the courts, not executive branch agencies, to interpret the law.

marketed and used by consumers in conjunction with festive occasions.  See Midwest, 122 F.3d at 1429.

The meaning of a tariff term is a question of law. Brookside Veneers, Ltd. v. United States, 6 Fed. Cir. (T) 121, 124, 847 F.2d 786, 788, cert. denied, 488 U.S. 943 (1988). Courts interpret the tariff acts in order to carry out legislative intent.  Nippon Kogaku (USA), Inc. v. United States, 69 CCPA 89, 92, 673 F.2d 380 (1982).  The first source for determining legislative intent is the statutory language.  United States v. Esso Standard Oil Co., 42 CCPA 144, 155 (1955).  In ascertaining the plain meaning of a particular statutory term, the Court presumes that Congress frames tariff acts using the language of commerce.  Nylos Trading Co. v. United States, 37 CCPA 71, 73 (1949).  The Court also presumes that the commercial meaning of a tariff term coincides with its common meaning, in the absence of evidence to the contrary.  United States v. C.J. Tower & Sons, 48 CCPA 87, 89 (1961).  The Court may rely on its own understanding to determine the common meaning of a tariff term.  See Brookside Veneers, 6 Fed. Cir. (T) at 125, 847 F.2d at 789.

Here, the Court relies on all of these factors, as well as the Federal Circuit's direct guidance.  See Midwest, 122 F.3d at 1429.  As a threshold matter, Customs's attempt to limit the Federal Circuit's holding in Midwest to only three dimensional object is without merit.  Nothing in the Federal Circuit's opinion even hints that such a distinction is warranted.  See id.

at 1423-29.  Rather, in <u>Midwest</u> the Federal Circuit sets out two requirements for festive articles classification: (1) such articles must be "closely associated" with a festive occasion and (2) such articles must be displayed and used by the consumer only during the festive occasion.  <u>See</u> <u>Midwest</u>, 122 F.3d at 1429.  The Federal Circuit did not define "closely associated."  <u>See</u> <u>id.</u> The Court, however, considers the meaning of the term to be self evident.  <u>See</u> <u>Brookside Veneers</u>, 6 Fed. Cir.(T) 125, 847 F.2d at 789.  If the physical appearance of an article is so intrinsically linked to a festive occasion that its use during other time periods would be aberrant, it is "closely associated" to the festive occasion.  <u>See</u> <u>id.</u>

A.   Merchandise Incorporating Festive Symbols and Color Schemes.

PBS's attempt to establish that the merchandise at issue is prima facie classifiable as festive articles is successful in part.  The merchandise at issue which incorporates festive symbols and color schemes[2] is "closely associated" with a festive

---

[2] The design styles which incorporate festive symbols or color schemes include:  At Home, Autumn Day, Autumn Decor, Autumn Welcome, Bats & Ghosts, Bunnies & Tulips, Bunny Hop, Candles & Bells, Celebration, Christmas Cottage, Christmas Deer, Christmas Garden, Christmas Garland, Christmas Highland, Christmas Holly, Christmas Ornaments, Christmas Pines, Christmas Presents, Christmas Sampler, Christmas Santa, Christmas Trees, Christmas Village, Christmas Wreath, Cornucopia, Country Quilt, Decorated Eggs, Duck Parade, Eagles Galore, Easter Basket & Eggs, Easter Bouquet, Easter Tulips, Fall Gathering, Gingham Hearts, Harvest Decor, Harvest Rows, Holiday Blossom/Holly Blossom, Holiday Town, Holly Border, Holly Leaves, Houses & Hearts, Jingle Bells, October Day, Poinsettia, Poinsettia Plaid, Pumpkins Galore, Rabbit Run, Ringing Bells, Rocking Horse, Santa's Plaid, Seasons Trimmings, Sensation, Star Light, Stardom, Stars & Stripes, Tartan, Trumpets & Hearts, Tulip Garden, Turkey Day, and White

occasion and, as the evidence adduced at trial indicated, the merchandise is likely to be "displayed and used by the consumer only during" a festive occasion.  See Midwest, 122 F.3d at 1429. Thus, such articles are "festive articles" and prima facie classifiable under heading 9505.

The Court finds it illustrative to review a representative sampling of the design styles which incorporate festive symbols and color schemes.  For example, the design style Autumn Welcome is closely associated with the festive occasion of Halloween. Autumn Welcome's design incorporates colors associated with the Fall season (browns and oranges), jack-o-lantern pumpkins and images of ghosts.  Because the colors and symbols are intrinsically linked to the celebration of Halloween the Court finds that Autumn Welcome would likely only be used by a consumer in relation to the festive occasion of Halloween.

The design style Cornucopia also bears mention. Cornucopia's design incorporates colors associated with the Fall season (browns and oranges), five images of cornucopias overflowing with fruits and gourds interspersed with deciduous tree branches bearing leaves. This design style is closely associated with the festive occasion of the Fall or harvest season.  Cornucopia's colors are associated with the Fall season and the cornucopia itself is a symbol strongly affiliated with harvest and abundance.  Because of this association, this design style would likely only be used by a consumer during the Fall or

Christmas.  See Pl.'s. Exh. 40.

harvest season.

Still other merchandise at issue incorporate no symbols, but incorporate color combinations and patterns associated with a festive occasion.  For example, Christmas Highland is a red and green plaid.  The Court finds that Christmas Highland is prima facie classifiable as a festive article because the design and the colors are so closely associated with the festive occasion of Christmas that the design would likely not be used by a consumer during any other time of the year.  See Midwest, 122 F.3d at 1429.  The color combination of red and green is so often and closely linked to Christmas in American culture that the Court considers the color combination to be "closely associated" to the festive occasion of Christmas.

At trial, merchandise incorporating festive symbols, color schemes and patterns was also shown to have been designed, marketed and sold for use during festive occasions and was in fact displayed and used by consumers only during festive occasions.  Specifically, PBS offered testimony from its president, from a member of its design department, from a PBS employee with extensive retail experience, and from a consumer of representative samples of the articles at issue.  The Court finds this testimony to be both credible and persuasive on the issue of whether the merchandise bearing festive symbols, color schemes and patterns was designed, marketed and sold for use during festive occasions and was displayed and used by consumers only during festive occasions.  See Midwest, 122 F.3d at 1429.

    B.    Articles Incorporating Single Color Schemes.

    There are, however, three design styles that the Court finds
are not prima facie classifiable as festive articles: Savannah,
Serendipity, and Squaredance.[3]  Savannah and Serendipity are
solid color design styles.[4]  Although both Savannah and
Serendipity may have been designed and marketed by PBS to be used
during the Christmas holiday, the designs are not closely
associated with Christmas.  To the contrary, the Court finds that
a solid color design is likely to be used by a consumer at any
time of the year and thus cannot be classified as a festive
article under the HTSUS.  Likewise, Squaredance, a green, red and
blue plaid, is not closely associated with a festive occasion.
As stated infra, the colors green and red in combination are
closely associated with the festive occasion of Christmas.  Here,
however, the addition of blue to the green and red plaid design
prevents the design style from being closely associated with
Christmas.  The color blue has no independent association with
Christmas and its combination with the colors red and green also
has no significance.  Therefore, the Court holds that merchandise
incorporating the design style Squaredance cannot be classified
as festive articles under the HTSUS.

---

    [3] In addition, PBS initially sought judgment in regard to
merchandise incorporating the design style Harvest Time.  PBS,
however, failed to supply any evidence of Harvest Time.
Therefore, the Court will not consider Customs's classification
of any merchandise at issue bearing the design style Harvest Time
and Customs's classification of such items will be affirmed.

    [4]Savannah and Serendipity were designed to be produced as
either solid red or solid green.

IV.      OPERATION OF SECTION XI NOTE 1(t), HTSUS.

The Court has held that Customs's classification of the merchandise at issue was prima facie correct and that PBS's proposed classification as to some of the merchandise at issue is also prima facie correct.  Thus, there is a conflict as to the correct classification of that merchandise.  In a circumstance such as this, the Court normally must decide which classification provides the most specific description.  See General Rules of Interpretation (GRI)3(a), HTSUS.  Here, however, a section note renders such an analysis unnecessary.

At trial, Customs argued that even if the merchandise at issue was prima facie classifiable as festive articles it was properly classified by Customs.  First, Customs claimed that Section XI, Note 1(t) did not operate to prohibit Customs's classifications because Note 1(t) contained a list of exemplars that should be interpreted to be exclusive.  Thus, Customs argued, because dhurries, placemats, napkins, and table runners do not appear in the parenthetical to Note 1(t), these types of articles are excluded from the operation of Note 1(t).  Customs then argued, again assuming a prima facie festive article classification, that the merchandise at issue was properly classified because the provisions chosen by Customs more specifically identified the merchandise.

PBS argued that Section XI, Note 1(t) operates to exclude all articles classifiable under Chapter 95, HTSUS, from classification under any chapter in Section XI.  Section XI,

contains Chapter 57 and Chapter 63, the two sections under which all the merchandise at issue was classified by Customs.

The Court finds that Note 1(t) of Section XI excludes all of the merchandise that is prima facie classifiable as festive articles under heading 9505 from classification as carpets and other textile floor coverings under chapter 57, HSTUS, or as other made up textile articles; needlecraft sets; worn clothing and worn textile articles; rags under chapter 63, HSTUS. Thus, for the merchandise at issue that the Court found to be prima facie classifiable as festive articles, Customs's classification of these articles under chapter 57 and 63 was in error.

GRI 1, HTSUS, provides that classification shall be determined "according to the terms of the headings and any relative section or chapter notes...." Section XI of Note 1(t) of Section XI is quite clear: "1. This section does not cover: (t)Articles of chapter 95 (for example, toys, games, sports requisites and nets)." Customs's assertion that the list of exemplars is exclusive is without merit. The clear meaning of this note is to exclude <u>all</u> articles classifiable under chapter 95 from classification anywhere in Section XI. The parenthetical examples are just that B examples.[5]

## CONCLUSION

Therefore, although Customs's classification of all the

---

[5]This Court's determination in regard to the operation of Note 1(t) Section XI parallels the CFAC's analysis of the operation of note 2ij, chapter 69, in <u>Midwest</u>. <u>See</u> 122 F.3d at 1429.

merchandise at issue was prima facie correct, Customs erred in

its classification of the merchandise incorporating festive

symbols, color schemes and patterns because Section XI Note 1(t)

HTSUS compels Customs to classify these items as festive

articles.

### JUDGMENT

This case having been heard at trial and submitted for decision, and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED, and DECREED: that the classification of the Christmas dhurries, excluding merchandise incorporating design styles Harvest Time, Savannah, Serendipity, and Squaredance, by the United States Customs Service ("Customs") under subheading 5702.99.10 of the Harmonized Tarrif Schedule of the United States ("HTSUS") is reversed; and it is further

ORDERED, ADJUDGED, and DECREED: that Customs shall reliquidate the immediately aforementioned subject merchandise under subheading A9505.10.50 of the HTSUS, dutiable at the rate of free.  Customs shall refund all excess duties paid with interest as provided by law.  Judgment is hereby entered for plaintiff; and it is further

ORDERED, ADJUDGED, and DECREED: that the classification of the Christmas dhurries incorporating design styles Harvest Time, Savannah, Serendipity, and Squaredance, by Customs under subheading 5702.99.10 of HTSUS is affirmed.  Judgment is hereby entered for defendant; and it is further

ORDERED, ADJUDGED, and DECREED: that the classification of the Christmas placemats and table runners, excluding merchandise incorporating design styles Harvest Time, Savannah, Serendipity, and Squaredance, by Customs under subheading 6302.51.40 of the HTSUS is reversed; and it is further

ORDERED, ADJUDGED, and DECREED: that Customs shall reliquidate the immediately aforementioned subject merchandise under subheading A9505.10.50 of the HTSUS, dutiable at the rate of free.  Customs shall refund all excess duties paid with interest as provided by law.  Judgment is hereby entered for plaintiff; and it is further

ORDERED, ADJUDGED, and DECREED: that the classification of the Christmas placemats and table runners incorporating design

styles Harvest Time, Savannah, Serendipity, and Squaredance, by Customs under subheading 6302.51.40 of the HTSUS is affirmed. Judgment is hereby entered for defendant; and it is further

ORDERED, ADJUDGED, AND DECREED: that the classification of Christmas napkins, excluding merchandise incorporating design styles Harvest Time, Savannah, Serendipity, and Squaredance, by Customs under subheading 6302.51.20 of the HTSUS is reversed; and it is further

ORDERED, ADJUDGED, AND DECREED: that Customs shall reliquidate the immediately aforementioned subject merchandise under subheading A9505.10.50 of the HTSUS, dutiable at the rate of free. Customs shall refund all excess duties paid with interest as provided by law. Judgment is hereby entered for plaintiff, and it is further

ORDERED, ADJUDGED, AND DECREED: that the classification of Christmas napkins incorporating design styles Harvest Time, Savannah, Serendipity, and Squaredance, by Customs under subheading 6302.51.20 of the HTSUS is affirmed. Judgment is hereby entered for defendant; and it is further

ORDERED, ADJUDGED, AND DECREED: that the classification of 4th of July, Easter and Halloween dhurries, excluding merchandise incorporating design styles Harvest Time, Savannah, Serendipity, and Squaredance, by Customs under subheading 5702.99.10 of the HTSUS is reversed; and it is further

ORDERED, ADJUDGED, AND DECREED: that Customs shall reliquidate the immediately aforementioned subject merchandise under subheading A9505.90.60 of the HTSUS, dutiable at the rate of free. Customs shall refund all excess duties paid with interest as provided by law. Judgment is hereby entered for plaintiff; and it is further

ORDERED, ADJUDGED, AND DECREED: that the classification of 4th of July, Easter and Halloween dhurries incorporating design styles Harvest Time, Savannah, Serendipity, and Squaredance by Customs under subheading 5702.99.10 of the HTSUS is affirmed. Judgment is hereby entered for defendant; and it is further

ORDERED, ADJUDGED, and DECREED: that the classification of 4th of July, Easter and Halloween placemats and table runners, excluding merchandise incorporating design styles Harvest Time, Savannah, Serendipity, and Squaredance, by Customs under subheading 6302.51.40 of the HTSUS is reversed; and it is further

ORDERED, ADJUDGED, and DECREED: that Customs shall reliquidate the immediately aforementioned subject merchandise under subheading A9505.90.60 of the HTSUS, dutiable at the rate of free. Customs shall refund all excess duties paid with

interest as provided by law.  Judgment is hereby entered for plaintiff; and it is further

ORDERED, ADJUDGED, and DECREED: that the classification of 4th of July, Easter and Halloween placemats and table runners incorporating design styles Harvest Time, Savannah, Serendipity, and Squaredance by Customs under subheading 6302.51.40 of the HTSUS is affirmed; and it is further

ORDERED, ADJUDGED, and DECREED: that the classification of the 4th of July, Easter and Halloween napkins, excluding merchandise incorporating design styles Harvest Time, Savannah, Serendipity, and Squaredance, by Customs under subheading 6302.51.20 of the HTSUS is reversed; and it is further

ORDERED, ADJUDGED, and DECREED: that Customs shall reliquidate the immediately aforementioned subject merchandise under subheading A9505.90.60 of the HTSUS, dutiable at the rate of free.  Customs shall refund all excess duties paid with interest as provided by law.  Judgment is hereby entered for plaintiff; and it is further

ORDERED, ADJUDGED, and DECREED: that the classification of the 4th of July, Easter and Halloween napkins incorporating design styles Harvest Time, Savannah, Serendipity, and Squaredance by Customs under subheading 6302.51.20 of the HTSUS is affirmed.  Judgment is hereby entered for defendant.

_____
                          JUDGE
          Dated:    May 29, 2001
          New York, New York

**ERRATA**

<u>Park B. Smith, Ltd., v. United States</u>, Court No. 96-02-00344, Slip-Op. 01-63, dated May 29, 2001.

On page 1 delete the name "Edward N. Maurer" and insert the name "Sheryl A. French."

May 31, 2001