Slip Op. 02 - 144

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - -x

SCHULSTAD USA, INC.,                              :

                          Plaintiff, :

            v.                        :  Court No. 97-09-01572

UNITED STATES,                        :

                          Defendant. :

- - - - - - - - - - - - - - - - - - -x

<u>Opinion</u>

[On classification of frozen Danish foodstuff,
 judgment for the defendant.]

                              Decided:  December 9, 2002

     <u>Hodes Keating & Pilon</u> (<u>Lawrence R. Pilon</u> and <u>Jessica T. DePinto</u>) for the plaintiff.

     <u>Robert D. McCallum, Jr</u>., Assistant Attorney General; <u>John J. Mahon</u>, Acting Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (<u>Aimee Lee</u>); and Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service (<u>Chi S. Choy</u>), of counsel, for defendant.

          AQUILINO, Judge:  To bake, or not to bake, in the state of Denmark, that is the trans-Atlantic question that underlies this test case within the meaning of USCIT Rule 84(c).  The decision not to fire up the oven over there has not left the U.S. Customs Service cool to imposing duties on the *danish* upon entry over here, which imposts have been protested and then sued upon by the plaintiff importer.

I

The duties assessed upon the entries that are the predicate of this action were 8.8 and 8.2 percent *ad valorem* per subheading 1901.90.90 of the Harmonized Tariff Schedule of the United States ("HTSUS"), depending on the year of arrival. The plaintiff continues to pray for entry duty free under subheading 1905.90.10.41 ("Frozen: . . . Pastries, cakes and similar sweet baked products; puddings").

Following its answer to the complaint, the defendant has interposed a motion for judgment on the pleadings or, in the alternative, for summary judgment pursuant to USCIT Rule 12(c). The plaintiff has filed papers in opposition to that motion. Thereafter, it sought and obtained leave to file its own cross-motion for summary judgment upon condition that the parties confer and file herein either a stipulation or statement(s) within the meaning of CIT Rule 56(h). They have complied by filing a Joint Statement of Undisputed Material Facts, paragraphs 9-12 of which describe the subject merchandise as consisting of "ingredients such as unbleached flour, eggs, leaven, fats, fruit, sugar, milk and bakery improvers", as being "frozen and unbaked", that is, "pre-proofed, pre-filled, flash frozen and ready for oven baking"; as being available in "five flavors: apple crown, vanilla crown with hazelnuts, raspberry crown, cinnamon swirl and cheese plait"; and as "imported in bulk packages consisting of 48 units per case for

'classic' and 100 units per case for 'mini'", each case "also contain[ing] two icing bags for use as pastry topping."

In their joint statement, the parties stipulate that in this case "there are no material facts as to which there exists a genuine issue to be tried and the issues are amenable to resolution through dispositive motions" within the meaning of USCIT Rule 56. Upon review of their written submissions, this court concurs.

The crux of this test case is interpretation of the HTSUS on its face, issue(s) of law that can be resolved without trial. And the court has jurisdiction pursuant to 28 U.S.C. §§ 1581(a), 2631(a) *et seq*.

II

Plaintiff's entries were classified (and thereafter liquidated) by Customs as "food preparations of flour . . . not elsewhere specified or included[]; . . . other . . . other . .. other . . . other . . . other . . . other", HTSUS subheading 1901.90.90. In denying plaintiff's protest thereof, the Service referred to its Headquarters Ruling HQ 089810 (Nov. 7, 1991) to the effect that,

> [s]ince the articles are unbaked and will only be baked after importation, we do not believe that they would be considered products of the type specified in heading 1905, HTSUSA, at the time of importation.[1]

---

[1] Defendant's Response to Plaintiff's Cross-Motion for Summary Judgment, Exhibit A, p. 1.

The defendant further reasons now that the words "and similar baked products" in plaintiff's preferred HTSUS subheading 1905.90.10.41, supra, make it "evident that the items preceding the[m] . . . must be in fact baked prior to importation in order to fit within this provision."  Memorandum in Support of Defendant's Motion for Judgment, p. 7.  And it emphasizes that,

> through plaintiff's own representations, . . . the imported merchandise here is not subject to baking prior to its importation.  In fact, the merchandise is designed to be baked after importation.  According to the information submitted in Schulstad's protest with attached marketing materials, the imported merchandise is pre-proofed[], flash frozen Danish pastry that are ready to bake in any commercial oven.

Id. at 8.

The plaintiff replies that those words "and similar baked articles" do

> not exclude unbaked pastries from the subheading because the[y] . . . do[] not clearly modify all the articles enumerated before or after it.  The subheading also provides for "puddings" which are not baked.

Plaintiff's Response to Defendant's Motion for Judgment, p. 3.  It also argues that "the merchandise is an incomplete pastry and as such would still be classifiable under Heading 1905."  Memorandum in Support of Plaintiff's Motion for Summary Judgment, p. 10.

A

The HTSUS (1997) contains General Rules of Interpretation, which govern this action as follows:

1.   . . . [F]or legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the following provisions:

2. (a)   Any reference in a heading to an article shall be taken to include a reference to that article incomplete or unfinished, provided that, as entered, the incomplete or unfinished article has the essential character of the complete or finished article. . . .

   (b)   Any reference in a heading to a material or substance shall be taken to include a reference to mixtures or combinations of that material or substance with other materials or substances. Any reference to goods of a given material or substance shall be taken to include a reference to goods consisting wholly or partly of such material or substance. The classification of goods consisting of more than one material or substance shall be according to the principles of rule 3.

3.   When, by application of rule 2(b) or for any other reason, goods are, *prima facie*, classifiable under two or more headings, classification shall be effected as follows:

   (a)   The heading which provides the most specific description shall be preferred to headings providing a more general description. However, when two or more headings each refer to part only of the materials or substances contained in mixed or composite goods . . ., those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.

   (b)   Mixtures, composite goods consisting of different materials . . ., which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.

(c)    When goods cannot be classified by reference
       to 3(a) or 3(b), they shall be classified
       under the heading which occurs last in numeri-
       cal order among those which equally merit
       consideration.

4.    Goods which cannot be classified in accordance with
      the above rules shall be classified under the
      heading appropriate to the goods to which they are
      most akin.

* * *

6.    For legal purposes, the classification of goods in
      the subheadings of a heading shall be determined
      according to the terms of those subheadings and any
      related subheading notes and, *mutatis mutandis*, to
      the above rules, on the understanding that only
      subheadings at the same level are comparable. For
      the purposes of this rule, the relative section,
      chapter and subchapter notes also apply, unless the
      context otherwise requires.

And these rules are to be applied in the following manner:

. . . [A] court first construes the language of the
heading, and any section or chapter notes in question, to
determine whether the product at issue is classifiable
under the heading. Only after determining that a product
is classifiable under the heading should the court look
to the subheadings to find the correct classification for
the merchandise. *See* GRI 1, 6. Furthermore, when deter-
mining which heading is the more specific, and hence the
more appropriate for classification, a court should
compare only the language of the headings and not the
language of the subheadings. *See* GRI 1, 3.

Orlando Food Corp. v. United States, 140 F.3d 1437, 1440 (Fed.Cir.

1998).

B

The merchandise at issue herein falls within the ambit of HTSUS Chapter 19 (Preparations of Cereals, Flour, Starch or Milk; Bakers' Wares) (1997). And the headings of that chapter posited by the parties as dispositive[2] provide *in haec verba*:

1901 Malt extract; food preparations of flour, meal, starch or malt extract, not containing cocoa or containing less than 40 percent by weight of cocoa calculated on a totally defatted basis, not elsewhere specified or included; food preparations of goods of headings 0401 to 0404, not containing cocoa or containing less than 5 percent by weight of cocoa calculated on a totally defatted basis, not elsewhere specified or included[.]

1905 Bread, pastry, cakes, biscuits and other bakers' wares, whether or not containing cocoa; communion wafers, empty capsules of a kind suitable for pharmaceutical use, sealing wafers, rice paper and similar products[.]

To compare the language of these headings in accordance with <u>Orlando Food Corp. v. United States</u>, <u>supra</u>, seems, at first blush, to favor the plaintiff. If not a "pastry", then perhaps plaintiff's product is simply an "other bakers' ware[]". If the latter, instructive (though not conclusive[3]) Explanatory Note 19.01 (II)(e) indicates that heading 1901 **excludes**[4] "[f]ully or partially

---

[2] Perusal of chapter 19 does not detect another heading therein that better could be construed to classify plaintiff's goods.

[3] <u>See</u>, <u>e.g.</u>, <u>Midwest of Cannon Falls, Inc. v. United States</u>, 122 F.3d 1423, 1428 (Fed.Cir. 1997); <u>Structural Industries, Inc. v. United States</u>, 26 CIT ___, ___, Slip Op. 02-141, p. 5 n. 1 (Dec. 4, 2002).

[4] Emphasis in original.

cooked bakers' wares, the latter requiring further cooking before consumption (**heading 19.05**)."  On the other hand, Explanatory Note 19.01 (II) indicates that

> heading [1901] covers a number of food preparations with a basis of flour or meal, of starch or of malt extract, which derive their essential character from such materials whether or not these ingredients predominate by weight or volume.

Moreover, the foodstuffs of this heading "may be . . . in the form of . . . doughs" and "may also constitute intermediate preparations for the food industry."

However helpful these particular notes, disposition of this matter must ultimately derive from definition of the terms at issue--in their enacted context.  And it is well-settled that when terms of a tariff schedule are not defined either directly therein or in its legislative history, the correct meaning is the common meaning understood in trade and commerce.  E.g., Schott Optical Glass, Inc. v. United States, 67 CCPA 32, 34, C.A.D. 1239, 612 F.2d 1283, 1285 (1979).  Cf. C.J. Van Houten & Zoon v. United States, 11 CIT 409, 410, 664 F.Supp. 514, 516 (1987)(the "common meaning of the words appl[ies] unless Congress clearly indicated that a commercial designation is to prevail").

(1)

Pastry has been defined by The Oxford English Dictionary, p. 325 (2d ed. 1989) as the

> collective term for articles of food made of paste . . . or of which paste forms an essential part; now only applied to such articles when baked, as pies, tarts, etc.

The American Heritage Dictionary, p. 1325 (3d ed. 1996) similarly

refers to pastry as

> [d]ough or paste consisting primarily of flour, water,
> and shortening that is baked and often used as a crust
> for foods such as pies.  . . . Baked sweet foods made
> with pastry:  *Viennese pastry*.

Another lexicon offers as its primary definition "sweet baked goods

made of dough or having a crust made of enriched dough".  Webster's

Third New International Dictionary, p. 1653 (1993).


Urged by the plaintiff is the concept that

> "pastry" encompasses more than baked articles.  Baking
> does not form the essential part of the pastry.  The term
> "pastry" is actually derived from the Old French "paste,"
> meaning a dough used in making rich pastry.  . . . Thus
> it is the "paste" or dough which forms the essential part
> of the pastry.[5]

The plaintiff also advocates the adoption of a commercial defini-

tion, which is a

> **rich dough** made from flour and salt and water and some
> form of shortening (butter, goose fat, margarine, lard,
> or a hydrogenated vegetable shortening).  Most pastry
> dough is unleavened but there are exceptions as with
> **Danish pastry**.  . . .[6]

And it claims to quote from The International Dictionary of

Desserts, Pastries and Confections, p. 95 (1995), which describes

Danish pastry as a

---

[5] Plaintiff's Response to Defendant's Motion for Judgment, p. 4 (footnote and citation omitted).

[6] Memorandum in Support of Plaintiff's Motion for Summary Judgment, p. 8, quoting Bartlett, The Cook's Dictionary and Culinary Reference: A Comprehensive, Definitive Guide to Cooking and Food, p. 340 (1996) (emphasis added by plaintiff).

yeast risen, butter- and egg-enriched, **sweet pastry dough** made using the same techniques as puff pastry and croissants. The dough is rolled out into a large rectangle and the butter is placed on a half or a third of it. The dough is folded over, rolled out, and folded again. Repeating the process several times results in hundreds of flaky layers of dough. **The pastry dough is made into sweet rolls of various shapes with different fillings, such as fresh and dried fruits, cheese, nuts, almond paste, custard, or jam**. Often, Danish pastry is iced after baking.[7]

These definitions pressed by the plaintiff, self-evidently, stick to "dough" or "pastry dough", not the preferred edible delicacy that can arise therefrom. Moreover, since Congress has not specified that a commercial definition control, without baking plaintiff's product, as imported, cannot and therefore would not satisfy the common understanding and immediate expectation of Danish *pastry*.

(2)

The plaintiff argues in the alternative that its goods are classifiable as "bakers' wares" under HTSUS heading 1905[8]. Un-

_____

[7] Memorandum in Support of Plaintiff's Motion for Summary Judgment, p. 9 (emphasis added by plaintiff).

[8] That heading and the proffered subheading are found in the governing HTSUS (1997) in the following format:

1905   Bread, pastry, cakes, biscuits and other bakers'
       wares. . .:
                            * * *
1905.90     Other:
1905.90.10       Bread, pastry, cakes, biscuits and
                 similar baked products, and pud-
                 dings, whether or not containing
                 chocolate, fruit, nuts or confec-
                 tionary .......................

               Frozen:
       41            Pastries, cakes and similar
                     sweet baked products; puddings[.]

like pastry and the plural thereof, those wares are not referenced in the subheading(s) which the plaintiff claims should, in the end, govern this matter.  Be that as it may, the plaintiff points out that its merchandise is sold to commercial bakeries, and it refers to Explanatory Note 19.05(A) to the effect that heading 1905 covers all bakers' wares, the

> most common ingredients of [which] are cereal flours, leavens and salt but they may also contain other ingredients such as gluten, starch, flour of leguminous vegetables, malt extract or milk, seeds such as poppy, caraway or anise, sugar, honey, eggs, fats, cheese, fruit, cocoa in any proportion, meat, fish, bakery "improvers", etc. Bakery "improvers" serve mainly to facilitate the working of the dough, hasten fermentation, improve the characteristics and appearance of the products and give them better keeping qualitites.  The products of this heading may also be obtained from a dough based on flour, meal or powder of potatoes.

A number of these substances are found in plaintiff's product, as entered.   See, e.g., Plaintiff's Motion for Summary Judgment, Affidavit of Bob Krieger, para. 6; Joint Statement of Undisputed Material Facts, para. 12.  According to Mr. Krieger, plaintiff's general manager and president, "the actual total pastry preparation period [in Denmark is] 3,077.5 minutes, including the 48 hours of core freezing after production and before shipping"[9] to the United States, with the frozen product arriving "mixed, laminated, layered (turned), shaped, filled and proofed."[10]  The court accepts these

---

[9] Plaintiff's Motion for Summary Judgment, Affidavit of Bob Krieger, para. 2.

[10] Id., para. 7.

and all of the other representations of Mr. Krieger's affidavit, including his final one that, after arrival here, "they only need to be baked and iced, glazed or powdered."[11]  In addition to a lack of any baking over there, the plaintiff does not indicate any foreign cooking of its wares.  Hence, the court must also find that plaintiff's frozen mass of pastry ingredients arrives over here completely uncooked.  See generally Plaintiff's Motion for Summary Judgment, Affidavit of Michael Washer.  Ergo, the exclusion of fully or partially cooked bakers' wares' coverage by HTSUS heading 1901 (in favor of heading 1905) suggested by Explanatory Note 19.01 (II)(e), supra, does not advance disposition of this action in the direction the plaintiff prefers.

(3)

To repeat, the plaintiff does not dispute the fact that its merchandise is not baked. E.g., Plaintiff's Response to Defendant's Motion for Judgment, p. 3.  Indeed, the plaintiff reaffirms that the "crispy, flaky texture, the hallmark of European pastry, is lost if the pastry is frozen after it is baked."[12]  Stated another way, "[a]uthentic Danish pastry is crispy, tender

---

[11] Id., para. 8.

[12] Memorandum in Support of Plaintiff's Motion for Summary Judgment, p. 20 (emphasis in original).

> . . . In this case, the named article['s] . . . frozen state is an inventive improvement that enables commercial bakers in the U.S. to produce authentic Danish pastry in a cost efficient manner.

Id. at 20-21.

and slightly flaky"[13], and the court so finds this to be its essential *character* within the meaning of General Rule of Interpretation 2(a), <u>supra</u>.  <u>See</u>, <u>e</u>.<u>g</u>., Memorandum in Support of Plaintiff's Motion for Summary Judgment, pp. 12, 16, 20;  Plaintiff's Motion for Summary Judgment, Affidavit of Michael Washer, para. 20; Affidavit of Bob Krieger, para. 3; Exhibit A, second page; Exhibit C; Schulstad  USA, <u>Danish Pastries</u> (visited Nov. 8, 2002) <http://www.awardsamerica.com/products/schulstad.htm>.  Thus, the court can concur in that part of the summary of plaintiff's argument which articulates that,

> [w]hen Schulstad's pastries are imported into the U.S. they have already been mixed, laminated, layered (turned), shaped, filled and proofed.  The value has already been imparted to Schulstad's pastry before it arrives in the U.S. and before it is baked.  After the products arrive in the U.S. they need only be placed on a baking tray and baked for 18-20 minutes.  Baking is the least complex and the last phase of producing the Danish. . . . In fact, baking Schulstad's Danish pastry at the published bake time of 18 minutes represents only .5% of the product's total preparation time.[14]

But the court cannot concur with this summary's premise that "Schulstad's products have the essential character of a pastry even before they are baked."[15]  On the contrary, while they doubtless enter the United States possessed of all their essential ingredients prepared with all the skill for which the state of Denmark has

---

[13] <u>Id</u>. at 20.

[14] <u>Id</u>. at 5 (citations omitted).

[15] <u>Id</u>.

long been well-known, clearly, it is that last step of baking -- in America -- which imparts that essential and savored character of a *danish*.

                                    III

Since the parties have not persuaded the court what Congress could have (or may have) intended or contemplated with the inclusion of "Frozen . . . Pastries" in HTSUS subheading 1905.90.-10.41, <u>supra</u>, and, while the goods at issue in <u>Danish Bakers, Inc. v. United States</u>, 53 Cust.Ct. 168, 169, C.D. 2490 (1964), were frozen, unbaked turnovers subject to classification under then-applicable, different tariff schedules, which merchandise that court found "could best be imported in the frozen form; . . . perhaps only in that form", this court discerns no basis to distinguish the holding of <u>Danish Bakers</u> that, nevertheless, frozen foodstuff cannot be classified with baked articles if not in fact baked before freezing.  Here, this means that plaintiff's entered frozen mass of fully prepared pastry ingredients does land in the food "basket" provision of HTSUS heading 1901, which is what the U.S. Customs Service came to conclude.

Judgment for the defendant will enter accordingly.

Decided:  New York, New York
          December 9, 2002

                                    _____
                                    Judge