**PARK B. SMITH, LTD., Plaintiff–Cross Appellant,**

v.

**UNITED STATES, Defendant–Appellant.**

**Nos. 01–1578, 01–1586.**

United States Court of Appeals, Federal Circuit.

DECIDED: Oct. 21, 2003.

---

**924**

Christopher E. Pey, Coudert Brothers LLP, of New York, NY, argued for plaintiff-cross appellant. With him on the brief were Steven H. Becker and Scott D. Shauf. Of counsel was Robert L. Eisen.

Mikki Graves Walser, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of New York, NY, argued for defendant-appellant. With her on the brief was David M. Cohen, Director; Washington, DC. Of counsel was John J. Mahon, Attorney. Also of counsel was Sheryl A. French, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, of New York, NY.

Alan Goggins, Barnes, Richardson & Colburn, of New York, NY, for Amici Curiae British Ceramic Gift & Tableware Manufacturers' Association, and Verband der Keramischen Industrie e.V. Of counsel on the brief were Gunter von Conrad and Kevin J. Sullivan.

Before NEWMAN, LOURIE, and DYK, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

The government appeals the decision of the United States Court of International Trade, holding that certain imported goods are prima facie classifiable as Festive Articles under Heading 9505 of the Harmonized Tariff Schedules of the United States (HTSUS).[1] Park B. Smith, Ltd. (PBS) cross appeals the decision that three of the imported articles are not classifiable as Festive Articles. We affirm the court's rulings of the applicable law, and remand for reapplication to some of the imported articles. On the cross-appeal, the ruling of the Court of International Trade is affirmed.

### Standard of Review

Customs classification is established by law. The Court of International Trade is required to decide, on a de novo basis, civil actions that contest the denial of a protest to a Customs classification ruling. 28 U.S.C. § 1581(a) ("The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930"); 28 U.S.C. § 2640 ("The Court of International Trade shall make its determination upon the basis of the record made before the court in the following categories of civil actions: (1) civil actions contesting the denial of a protest under section 515 of the Tariff Act of 1930 ..."); see Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed.Cir.1984) ("whether the court remands, conducts its own hearing, or simply examines the law and the tariff schedules on its own initiative, it is required to reach a correct result").

The first step in determining and applying the correct Customs classification

---

1. *Park B. Smith, Ltd. v. United States*, No. 96–02–00344, 2001 Ct. Intl. Trade LEXIS 71, 2001 WL 576159 (Ct. Int'l Tr. May 29, 2001).

requires determining the meaning of any disputed terms in the relevant tariff provision. Determination of the parameters of a Customs classification under the HTSUS is a matter of statutory interpretation, and is given plenary review on appeal. The second step is to apply the provision to the specific imported merchandise, a question of fact that warrants appropriate deference to the finder of fact. *See, e.g., Sports Graphics, Inc. v. United States,* 24 F.3d 1390, 1391 (Fed.Cir.1994) ("The ultimate issue as to whether particular imported merchandise has been classified under an appropriate tariff provision is a question of law which we review de novo. Resolution of that issue entails a two step process: (1) ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed. The first step is a question of law which we review de novo and the second is a question of fact which we review for clear error.") (citations omitted).

In *United States v. Mead Corp.,* 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), the Court confirmed that Customs classification rulings are not accorded *Chevron* deference, *see Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), because "[t]he authorization for classification rulings, and Customs' practice in making them, present a case far removed not only from notice-and-comment process, but from any other circumstances reasonably suggesting that Congress ever thought of classification rulings as deserving the [*Chevron*] deference claimed for them here." *Mead,* 533 U.S. at 231, 121 S.Ct. 2164.

■ Applying *Mead,* Customs rulings that are not the product of notice-and-comment rulemaking as exemplified in

*United States v. Haggar Apparel Co.* 526 U.S. 380, 119 S.Ct. 1392, 143 L.Ed.2d 480 (1999), are nonetheless entitled to the deference described in *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). In *Skidmore* the Court held that "the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* at 140, 65 S.Ct. 161. Although PBS argues that even *Skidmore* deference should not apply here because Customs issued no formal decision when it classified this merchandise, and proffered no analysis until this litigation, we conclude that *Skidmore* weight should be given to Customs' position.

■ Thus on appeal to the Court of International Trade the importer's burden of establishing that the Customs ruling is incorrect, 28 U.S.C. § 2639(a, c), must be met in the context of the persuasive power of Customs' reasoning. *See Heartland By–Products, Inc. v. United States,* 264 F.3d 1126 (Fed.Cir.2001). Upon further appeal to the Federal Circuit, the appellant bears the burden of establishing reversible error in the decision of the Court of International Trade, by showing that the court erred in its interpretation of the law, or that its findings of fact are clearly erroneous with due consideration to the appropriate level of deference. *See Bauerhin Tech. Ltd. Partnership v. United States,* 110 F.3d 774, 776 (Fed.Cir.1997).

DISCUSSION

■ At issue are sixty-two articles of textile products imported by PBS from India, consisting of placemats, table napkins, table runners, and woven rugs called dhurrie rugs. Many of these articles are decorated with holiday symbols, such as Santa Claus, Christmas trees and wreaths, Halloween ghosts, Easter bunnies, and flag motifs. Other articles are decorated in colorful designs or in solid colors that are often associated with holidays or seasons, such as red and green for Christmas, and shades of brown and orange for autumn. PBS states, and presented generally undisputed evidence at trial, that all of the articles are imported and sold only in conjunction with particular holidays, such as Christmas, Thanksgiving, Halloween, Easter, and the Fourth of July. The issue on appeal is whether some or all of these articles are classifiable as "festive articles" within the meaning of HTSUS heading 9505 for "Festive, carnival, or other entertainment articles including conjuring tricks and novelty jokes." Also relevant is subheading 9505.10 for "Articles for Christmas festivities," and subheading 9505.90 for "other."

The Customs Service assessed import duties at the rates established in Section XI "Textiles and Textile Articles" under HTSUS headings 6302 and 5702. The placemats and table runners were classified under subheading 6302.51.40 and the napkins under subheading 6302.51.20; the dhurrie rugs were classified under subheading 5702.99.1010. On appeal the parties stipulated that these articles are prima facie classifiable as textile articles under Section XI. The Court of International Trade, applying *Midwest of Cannon Falls, Inc. v. United States*, 122 F.3d 1423 (Fed. Cir.1997), held that fifty-nine of the sixty-two articles are also prima facie classifiable under Chapter 95 as festive articles,

and therefore that they are subject to Note 1(t) of Section XI, which provides:

Section XI, Notes

1. This Section does not cover:

\* \* \*

■ (t) Articles of Chapter 95 (for example, toys, games, sports requisites and nets);

Section and Chapter Notes are not optional interpretive rules, but are statutory law, codified at 19 U.S.C. § 1202. *See Libas, Ltd. v. United States*, 193 F.3d 1361, 1364 (Fed.Cir.1999) (describing chapter notes as "statutory language" of the HTSUS). The Court of International Trade held, and we agree, that Note 1(t) requires that if the Chapter 95 exclusion applies, it is irrelevant whether the articles are also classifiable as textile articles. *Cf. Midwest of Cannon Falls*, 122 F.3d at 1429 ("Note 2(ij) to chapter 69 states that the chapter does not cover 'Articles of chapter 95.' Accordingly, the issue here is whether the items at issue prima facie are classifiable under heading 9505. If so, then pursuant to note 2(ij), chapter 69, the items cannot fall under chapter 69 and must be classified under chapter 95.")

In *Midwest of Cannon Falls* the goods whose status as "festive articles" was in dispute were prima facie classifiable in Chapter 69, which contained an Exclusionary Note in the same words as Note 1(t). Among other items there at issue were ceramic mugs and pitchers in the shape of a jack-o-lantern. Responding to arguments similar to those now presented, this court held that these items were classifiable as "festive articles," even though they have a utilitarian purpose and prima facie fit another HTSUS heading.

The government again argues that Chapter 95 is limited to entertainment items, and that table linens and rugs can-

not be included in Chapter 95 because they are household goods. The government argues that decoration with holiday motifs does not make a "festive article," and that since these goods are of a "class or kind" of merchandise dutiable as textile articles, and not of the class or kind contemplated as "festive articles," these goods are not subject to the exception of Note 1(t).

In *Midwest of Cannon Falls* the court held that classification as a "festive article" under Chapter 95 requires that the article satisfy two criteria: (1) it must be closely associated with a festive occasion and (2) the article is used or displayed principally during that festive occasion. 122 F.3d at 1429. The court in *Midwest* held that "all of the items at issue are used in celebration of and for entertainment on a joyous holiday, and they are all prima facie classifiable as 'festive articles' under heading 9505." *Id.* at 1427. The Court of International Trade elaborated that "closely associated with a festive occasion" requires that "the physical appearance of an article is so intrinsically linked to a festive occasion that its use during other time periods would be aberrant." 2001 Ct. Intl. Trade LEXIS 71 at *7–8, 2001 WL 576159, *2 (citing *Brookside Veneers, Ltd. v. United States,* 847 F.2d 786, 789 (Fed.Cir.1988)).

Applying these criteria, the Court of International Trade placed the sixty-two articles here at issue in three categories: (1) articles bearing "festive symbols," such as Christmas trees, Santas, holly, ghosts and bats, Easter eggs and bunnies, and stars and stripes motifs; (2) articles in "festive color schemes" such as various plaids in red and green or blue, and "Country Quilt," an abstract design, and fall harvest motifs, and (3) articles in solid colors and "a green, red and blue plaid, [which] is not closely associated with a festive occasion."

The Court of International Trade held that the items in the first two categories meet the criteria of *Midwest of Cannon Falls,* and ruled that they are prima facie classifiable as festive articles under heading 9505. However, the court held that the third category of solid-colored red and green table linens that PBS styled "Savannah" and "Serendipity," and the pattern styled "Square Dance," a bright plaid in red, green, and blue, are not sufficiently related to a particular holiday to meet the *Midwest* criteria.

The government argues that the court erred as a matter of law in ruling that any of these articles is prima facie classifiable under Chapter 95. The government states that these items are ordinary household goods, and merely have holiday-related designs. The government argues that the sale and use of these goods at holiday times simply replaces the same "class or kind" of goods, and that the Court of International Trade erred in focusing on the decorative design instead of the class or kind of goods. Thus the government argues that the correct classification standard is whether the articles are the class or kind of merchandise that can be used only on a specific festive occasion, such as the Christmas tree ornaments of Chapter 95, and not whether the articles themselves are used only on the festive occasion. The government urges that since these articles are of a class or kind that is used on other, non-festive occasions, they are not properly classifiable as "festive articles," and are classifiable only as "textile articles."

■ In *Midwest of Cannon Falls* this court rejected the position that a utilitarian article cannot be a "festive article." Similarly, the fact that the article is of a class or kind that is used on other occasions does not bar classification as a festive article when the *Midwest* criteria are met.

PBS also points out that the "festive articles" exclusion appears in Notes for several titles of goods (such as the "Ceramic Articles" heading in the *Midwest* case), indicating congressional intention to favor festive items for tariff purposes. Indeed, it is clearly established that utilitarian articles can be festive articles.

The government also challenges the court's interpretation of Exclusionary Note 1(t), stating that it is limited to "toys, games, sports requisites and nets," the parenthetical examples in Note 1(t). That is not an accurate interpretation of a parenthetical that starts with "for example"; for an "example" is illustrative and informative, but not limiting. Indeed, the parenthetical omits many kinds of items that are listed in Chapter 95. Heading 9505 is itself subject to exclusions, such as natural Christmas trees, Christmas candles, paper or plastic festival packaging, flags and bunting, and religious statues. The parties debate whether such exclusions support the position that articles of a class or kind having non-festive use are excluded from Chapter 95, or support the contrary position. We conclude that the plain reading of Exclusionary Note 1(t), read in the context of the other Notes that exempt Festive Articles from various other classifications, supports the interpretation that congressional intent was to exempt festive articles, whether or not they are of the same class or kind of the substantive heading, except for those articles that are explicitly excluded from Chapter 95.

■ Both PBS and the government direct us to the General Rules of Interpretation and the Additional Rules of Interpre-tation. The first Rule is that the "court first construes the language of the heading and any section or chapter notes in question, to determine whether the product at issue is classifiable under the heading." *Orlando Food Corp. v. United States,* 140 F.3d 1437, 1440 (Fed.Cir.1998).[2] *See also Baxter Healthcare Corp. of Puerto Rico v. United States,* 182 F.3d 1333, 1337 (Fed. Cir.1999). This Rule supports the ruling of the Court of International Trade in construing Note 1(t), upon the parties' stipulation that the merchandise is prima facie classifiable as "textile articles" and in applying *Midwest* to rule that the merchandise is also prima facie classifiable as "festive articles." *Baxter,* 182 F.3d at 1337 (" 'Classification is to be determined according to the terms of the headings and any relevant section or chapter notes.' GRI 1. '[A] court first construes the language of the heading, and any section or chapter notes in question, to determine whether the product at issue is classifiable under the heading.' ") (quoting *Orlando Food,* 140 F.3d at 1440.)

The government also argues that on "relative specificity" analysis these articles must be classified only as textile articles and not also as festive articles. Relative specificity is included in General Rule of Interpretation 3(a) ("The heading which provides the most specific description shall be preferred to headings providing a more general description.") Rule 3(a) is applied after the prior rules, and does not override any section or chapter notes. *See* the Informed Compliance Publication of the United States Customs Service, "What Every Member of the Trade Community Should Know About: Tariff Classification"

**2.** General Rule of Interpretation 1 states:

The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, providing such headings or notes do not otherwise require, according to the following provisions: (The other Rules of Interpretation follow.)

(February 2001) ("GRI 1 takes precedence over the remaining rules").

We conclude that the statutory purposes are correctly interpreted and implemented by the ruling and criteria established in *Midwest of Cannon Falls*. That case does not convert every article having a cheerful design or holiday association into a "festive article" classifiable under Chapter 95, as the government argues. Although there is no basis in *Midwest of Cannon Falls* for drawing a classification distinction between two-dimensional and three-dimensional articles, as the government argued below, the *Midwest* decision does require that the article have a direct association with and limited use to a particular holiday occasion.

We conclude, however, that the Court of International Trade did not divide the goods before it with sufficient precision. The court correctly ruled that articles with symbolic content associated with a particular recognized holiday, such as Christmas trees, Halloween jack-o-lanterns, or bunnies for Easter, are festive articles. For the goods in this category the *Midwest* criteria are met; these goods are prima facie classifiable under Chapter 95, subheading 9505.

 However, those articles that are merely cheerful or colorful or associated with specific seasons of the year, either by symbol or color, but are not associated with a particular festive holiday, do not meet the criteria of *Midwest of Cannon Falls*. The *Explanatory Notes*[3] to Heading 9505 state that the heading includes decorations that "are traditionally associated with a particular festival." The general autumnal colors or other seasonal association do not invoke a particular festival.

We conclude that articles directed to general or seasonal use instead of to specific holiday festivals, do not meet the criteria of Chapter 95.

We conclude that articles that might be associated with a particular holiday because of their color schemes, but having no symbolic content, such as a red and green plaid, do not meet the *Midwest of Cannon Falls* criteria for festive articles under Chapter 95. If use of such articles at times other than holidays would not be aberrant, they do not meet the Chapter 95 criteria. The articles in the third category of the Court of International Trade were thus properly classified only as textile articles. For review of the articles of the court's first two categories, under this more rigorous standard, we remand to the trial court for detailed review, for the purpose of ascertaining which articles are not, by their design and symbols, directed to a specific festive holiday, and whether their use at times other than that holiday would be aberrant. The decision of the Court of International Trade is vacated; and we remand for application of the criteria set forth herein.

In view of these rulings, PBS's cross appeal as to the third category must fail, for these three items are not associated with a particular festival. As to the items on cross-appeal, the ruling of the Court is International Trade is affirmed.

No costs.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED.*

---

**3.** Unlike the chapter and section notes, the explanatory notes are not binding upon us. *See JVC Co. of America v. United States,* 234 F.3d 1348, 1352 (Fed.Cir.2000) ("Although the Explanatory Notes are not legally binding or dispositive, they may be consulted for guidance and are generally indicative of the proper interpretation of the various HTSUS provisions.")