Slip Op. 06 -41

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - -X

BERWICK INDUSTRIES, INC.,                :

                        Plaintiff,    :

              v.                      : Court Nos. 96-01-00263
                                                   98-12-03189
THE UNITED STATES,                   :

                        Defendant.    :

- - - - - - - - - - - - - - - - - - - -X

<u>Memorandum & Order</u>

[Upon classification of certain decorative bows,
 cross-motions for summary judgment denied.]

                                Dated:  March 31, 2006

    <u>Neville Peterson LLP</u> (<u>John M. Peterson</u>, <u>Maria E. Celis</u>,
<u>Catherine Chess Chen</u> and <u>Laura Martino</u>) for the plaintiff.

    <u>Peter D. Keisler</u>, Assistant Attorney General; <u>Barbara S.
Williams</u>, Attorney in Charge, International Trade Field Office,
Commercial Litigation Branch, Civil Division, U.S. Department of
Justice (<u>Mikki Graves Walser</u>); and Office of Assistant Chief
Counsel, International Trade Litigation, U.S. Customs and Border
Protection (<u>Sheryl A. French</u>), of counsel, for the defendant.


        AQUILINO, Senior Judge:    The above-named plaintiff

importer[1] commenced civil action 96-01-00263 as a test case

pursuant to USCIT Rule 84(b) to challenge classification by the

U.S. Customs Service of certain bows upon entry from the People's

Republic of China under either heading 3926 of the Harmonized

_____

    [1] Now known as Berwick Offray, L.L.C.

Tariff Schedule of the United States ("HTSUS") as "other articles of plastics" or heading 6307 as "other made up [textile] articles", dutiable at 5.3 or 7 percent *ad valorem*, respectively. Plaintiff's complaint is that that merchandise more appropriately landed under HTSUS heading 9505, "festive articles", and therefore should have been duty free upon entry into the United States. Defendant's answer disagrees with this position.

I

Following that joinder of issue, the plaintiff interposed a motion to enlarge the time for the action to remain on the reserve calendar pursuant to USCIT Rules 7 and 84, which motion was granted on the ground that the parties were "discussing the method in which the issues of the . . . action may best be resolved in an effort to conserve judicial resources". Plaintiff's Motion to Enlarge Time in Which Action May Remain on Reserve Calender, second page. Some two years later, the court requested that counsel apprise it of the matter's status. When another year and a half had passed, the court was constrained to inquire "why the above test case should not be dismissed . . . pursuant to USCIT Rule 41(b)". Plaintiff's counsel responded that they

had refrained from active litigation of this matter
pending final resolution of the *Park B. Smith* case, to
determine if the resolution of that case might be
dispositive of the classification of its Trim Time
bows.    While plaintiff believes that the Federal
Circuit's decision in *Park B. Smith*[*, Ltd. v. United
States*, 347 F.3d 922 (Fed.Cir. 2003),] favors its view
regarding the tariff classification of Trim Time Bows,
it does not appear that that decision will be
dispositive of the classification of its merchandise.

Furthermore, [the] *Park B. Smith* appellate
decision is not yet final.  The Federal Circuit is, as
of this writing, considering a petition for recon-
sideration submitted in that case . . ..    The Federal
Circuit has remanded the matter to this Court, with
directions for the Court to make further findings with
respect to the merchandise there at bar.

Accepting this explanation, the court granted plaintiff's request

for a scheduling conference, which was held shortly thereafter.

The parties were in agreement that the Federal

Circuit's denial of plaintiff's petition for reconsideration in

Park B. Smith effectively cleared the way for disposition of this

test case.    The court also inquired as to the status of

plaintiff's seemingly-related action, CIT No. 98-12-03189, to

which the plaintiff intimated the possibility of consolidation.

That initial reaction apparently faded prior to the

drafting of the parties' proposed scheduling order, which

continued to treat the two actions separately.    The court

thereupon expressed its "displeasure over the lack of any pro-
posal with regard to final disposition of CIT No. 98-12-0[31]89",
and it also inquired "whether or not that void c[ould] be filled
via default judgment".  In response thereto, the plaintiff sub-
mitted a proposed scheduling order for that action.

    Nonetheless, the undersigned remains uncertain why the
parties have not consolidated or suspended the later-commenced
action with (or in the light of) the earlier-initiated test case.
To borrow plaintiff's own words, "judicial resources can best be
conserved by avoiding active litigation of multiple suits dealing
with the same issue".  Here, not only does the subject matter
seem to be the same, so too the underlying legal issue, namely,
whether plaintiff's merchandise should have been classified under
HTSUS heading 9505 as "festive articles".  <u>Compare</u> Complaint No.
98-12-03189 . . .

> 12.  The festive bows: Veltex Perfect, Perfect
> Netting, and Trim-Time Bows are colored red, gold,
> silver, and tartan plaid, which are colors evocative of
> the Christmas season.
>
> 13.  The festive bows are primarily ornamental in
> nature.
>
> 14.  The festive bows are intended to be displayed
> and used during the Christmas holiday season, and are
> designed to contribute to the joy and festivity of the
> holiday.

15. Because they are designed and manufactured for the Christmas holiday season, the Veltex Perfect, Perfect Netting, and Trim-Time Bows are properly classifiable under HTS Subheading 9505.10.2500, as festive articles, specifically as articles for Christmas festivities: Christmas ornaments, other, other; or under HTS Subheading 9505.90.6000, as festive articles, specifically as other festive articles, other, other. Under these subheadings, these bows are entitled to enter the United States unconditionally free of duty. As products of the People's Republic of China, these festive bows are entitled to enter the United States without regard to any textile quota restrictions, and without the presentation at the time of entry of any textile visas. Customs erred in classification of such bows under HTS Subheadings 3926.40 or 6307.90.99. . . .

with Complaint No. 96-01-00263 . . .

5. The merchandise which is the subject of this case consists of certain "perfect bows" and "trim time" bows for festive occasions, which plaintiff imported into the United States at the Port of Newark, New Jersey.

6. The perfect bows are composed of textile materials, and are designed specifically for use as Christmas ornaments. The "trim time" bows are composed of polypropylene plastics materials, and polypropylene netting, and are specifically designed for use as festive articles, to be displayed in connection with certain holidays and festive occasions.

* * *

14. The plastic and textile bows are properly classifiable under HTS subheading 9505.10.25, as "Festive, carnival or other entertainment articles, including magic tricks and practical joke articles; parts and accessories thereof; Articles for Christmas festivities and parts and accessories thereof; Christmas ornaments; Other", and are entitled to enter the United States unconditionally duty free.

15.  Alternatively, the plastic and textile bows are properly classifiable under HTS subheading 9505.90.60, as "Festive, carnival or other enter- tainment articles, including magic tricks and practical joke articles; parts and accessories thereof; Other: Other:[",] and are entitled to enter the United States unconditionally duty free.

Given the foregoing, and in an effort to adhere to the principles set forth in USCIT Rule 1, the court will henceforth consider the above-numbered actions as if they have been consolidated.  <u>See</u> USCIT Rule 42(a):

> When actions involving a common question of law or fact are pending before the court, . . . it may order all the actions consolidated . . .; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

A

Indeed, the plaintiff has now interposed a motion for summary judgment accompanied by a required Statement of Material Facts Not in Dispute[2] combining the two actions, to wit:

## A.  Procedural History for Case Number 96-00263

1. From January 1995 through February 1995 and from July 1997 through September 1997, plaintiff imported the subject festive bows into the United States from the People's Republic of China.

---

[2] Complete capitalization deleted.

2. Beginning January 1995 through February 1995, plaintiff entered the subject bows under cover of Newark, New Jersey Consumption Entries, 743-0053169-1, 743-0053251-7, 743-0053318-4, and 743-0053023-0. These entries liquidated in May and June of 1995.

3. Defendant[] U.S. Customs . . ., . . . classified the subject bows at liquidation under Subheadings 3926.40.00, 3926.90.9890, and 6307.90.99 of the . . . HTSUS[]. Subheading 3926.40.0000 described, "Other articles of plastics and articles of other materials of headings 3901 to 3914: Statuettes and other ornamental articles," and goods that are classified therein are subject to a 5.3% import duty *ad valorem*. Subheading 3926.90.9890 described, "Other articles of plastics and articles of other materials of headings 3901 to 3914: Other:Other:Other," and imposes an import duty of 5.3% *ad valorem* on goods that are classified as such. Subheading 6307.90.99 described "Other made up articles, including dress patterns: Other: Other: Other: Other: Other." Goods entered under this subheading were subject to a textile quota and an import duty of 7% *ad valorem*.

4. On June 21, 1995, Berwick filed Protest number 1001-95-105544 objecting to the classification and duty assessed at the liquidation of the subject entries, and claiming classification under HTSUS Subheading 9505.10.2500, as "Festive, carnival or other entertainment articles . . . .: Articles for Christmas festivities and parts and accessories thereof: Christmas ornaments: Other" or under HTS Subheading 9505.90.6000, as "Festive, carnival or other entertainment articles . . [.]:Other: Other," enterable duty free.

5. On August 18, 1995, Customs denied Berwick's Protest . . .. On January 23, 1996, Berwick timely commenced case number 96-01-00263 before the Court of International Trade.

6. All duties were tendered prior to the commencement of this action.

**B.  Procedural History for Case No. 98-[]03189**

    7.  From July 1997 through September 1997, plaintiff entered the subject merchandise under cover of New York Consumption Entries, 743-0060717-8, 743-0061145-1, 743-0061243-4, 743-0061188-1, 743-0061283-0, and 743-0060859-8.  Customs liquidated these entries between May and July 1998, and classified the merchandise under HTS Subheadings 3926.40, and 6307.90.89, as other plastic articles and other made-up textile articles.

    8.  On August 18, 1998, Berwick filed a protest 1001-98-103164 objecting to the classification and duty assessed at liquidation of the subject entries and claiming classification under HTSUS Subheading 9505.10.2500, as "Festive, carnival or other entertainment articles . . . .: Articles for Christmas festivities and parts and accessories thereof: Christmas ornaments: Other" or under HTS Subheading 9505.90.6000, as "Festive, carnival or other entertainment articles . . [.]: Other: Other," enterable duty free.

    9.  On November 27, 1998, Customs denied Berwick's Protest . . . against the classification of festive bows on the ground that Customs' classification was correct.  Plaintiff Berwick timely commenced case number 98-12-03189 before the Court of International Trade on December 2, 1998.

    10.  All duties were tendered prior to the commencement of this action.

**C.  Description of Merchandise**

    11.  Plaintiff's imported merchandise that are the subject of this action consist[] of three types of festive bows.  Each bow manifests a decorative scheme consistent with the Christmas holiday season.  The *Perfect Bow* is a festive bow that is flocked with acrylic on the front surface to give it a velvet texture and, once assembled, boasts fourteen (14) to twenty (20) loops.  At retail, these bows are arranged

within a green box in a festive display of green, plaid, and red. The *Holiday Classic Bow* is long, by design so that it can be extended vertically across a Christmas wreath or dangled gracefully from a mantle. Like the *Perfect Bow*, the *Holiday Classic Bow* is flocked with acrylic to give it a festive velvet texture, a characteristic associated with the Christmas holiday. The typical red large *Holiday Classic Bow*, made from a material ex as "Veltex," is designed to be used on a Christmas wreath, or hanging, unaccompanied, from a store window or the doorpost of a home. The *Trim-Time Bow* is an intricately designed bow with a large size tie at its center. This Christmas bow is sold exclusively in Berwick's Trim-A-Tree Line through Trim-A-Tree line departments at retail stores and special holiday retailers.

12. The *Perfect Bow*, *Holiday Classic Bow*, and *Trim-Time Bows* are designed, sold as and used as holiday decorations for home and commercial furnishings. The bows are principally used as holiday decorations for wreaths, Christmas trees, mantels, walls, and window-sills in addition to a variety of other holiday-related uses. The bows are sold in traditional Christmas colors like, red, gold, tartan plaid, silver and are sold exclusively during the Christmas season.[3] All of these bows feature a cord or tie at the center of the back of the bow, in order for the bow to be easily hung, by nail or thread, as an ornament or decoration. The subject items do not include adhesive material, tape, or any other means by which they may be affixed to objects.

13. As noted, the subject bows are principally designed for the purpose of creating a festive bow used

---

[3] Upon inquiry by the court at oral argument, plaintiff's counsel stated that there were no "white" bows at issue herein. Nonetheless, the physical exhibits provided by the defendant in Attachment A to the Supplemental Declaration of Joan Mazzola, specifically, items numbered PF3, PFN9, PFN40, PFR9, appear to be white or a variation thereof. See also Plaintiff's Statement of Material Facts Not in Dispute, para. 14; Plaintiff's Attachment B-4, unnumbered third, seventh and eleventh pages.

for decorating a home or commercial space during the Christmas season. As such, the bows are made of either extruded polypropylene or wire-edged woven textile, fibers that, although sturdy, allow for more creative freedom than wood or steel. These materials are also water resistant, which allow them to be used as decorations outside the home. Further, the durability and weightlessness of these fabrics allow the decorative bows to be easily stored and re-used during subsequent holiday seasons.

The Perfect Bow

14. The *Perfect Bow*, depicted at Exhibit A, is designed primarily for the purpose of creating a festive bow that is used to decorate a home or commercial space during the Christmas season. It includes two strips that may be pulled to produce a bow with fourteen (14) to twenty (20) loops, an amount that far surpasses the number of loops in an ordinary, disposable ribbon. This bow is about 2" - 8" long, features ribbon about 2 inches wide, and is available in colors such as white, red, gold, silver, emerald, copper, navy, and champagne. The bow is made of Veltex which is extruded polypropylene with a flocked front surface. The flocked polypropylene gives the surface a heavy velvet appearance, which increases aesthetic appeal and facilitates the bow's use during the potentially harsh weather of December. The Veltex material also increases durability, which keeps the bow intact during use through the Christmas season, while in storage, and during subsequent holiday seasons.

15. Berwick's retail packages instruct that the *Perfect Bow* may be used for "Christmas trees," "home decorating," and "wreaths." Thus, the ultimate consumer would expect to use the article to create a Christmas ambiance in the home or store, by hanging it directly upon a house fixture, or by accessorizing a Christmas tree or wreath. Again, Berwick's retail display box for the *Perfect Bow* is green and the bows are arranged in a festive display of green, plaid, and red designs. Berwick's bows are sold in seasonal

sections of general merchandise and craft stores, as well as the holiday catalogs of Berwick.

Holiday Classic Bows

16. The *Holiday Classic Bows*, shown at Exhibit B, are designed primarily for use as festive decorations during the celebration of Christmas, in the home or business. This festive bow ranges in size from 3" - 22" long and 3" - 10" wide. Berwick fashioned its design to create a proportional fit with a Christmas wreath or tree. These bows feature two (2) to seven (7) loops and are available in red, green, gold, silver. Some bows depict images largely associated with Christmas, such as candy-cane stripes, hollies, etc. These bows are made from polypropylene ribbon, *i.e.* Veltex, plus acetate satin, vinyl, or PET/Polyester "Supersilk" material. Like the *Perfect Bow*, the *Holiday Classic Bow* was designed with a flocked polypropylene to give the surface a heavy velvet appearance, a design characteristic that increases aesthetic appeal and allows it to withstand the inclement weather if used to decorate the outside of a home during the winter months. The Veltex material also increases durability, which keeps the bow intact for use during the Christmas season, while in storage, and during subsequent holiday seasons.

17. The advertising brochure, at Exhibit B, depicts several uses for the *Holiday Classic Bow*: a red bow affixed to a wreath, hanging against an interior wall; and two red bows affixed against a mantle, beneath a green wreath. Advertised on the retail packages are the words, "Home Decorating." It follows that the ultimate purchasers of the bows would expect to use them as festive decorations. Their channels of trade include seasonal sections of general merchandise and craft stores, as well as Berwick's holiday catalogs.

Trim-Time Bows

18. The *Trim-Time Bows*, *depicted* at Exhibit C, are designed to be tied to home fixtures, e.g. mantles, Christmas trees, etc. and are typically use[d] with

other festive decorations to bolster the spirit of the Christmas season. The *Trim-Time Bows* are highly decorative festive bows which are approximately 5" - 20" wide, 8" - 20" long, and feature intricately designed ribbons and ties. These bows are made of wire-edged woven textile and incorporate traditional Christmas colors of red and green plus a tartan plaid. The wire edges enable the bows to maintain their shape during each and subsequent holiday season. They are available in various colors like silver, gold, green, blue, burgundy, and in a holly pattern – a quintessential symbol of Christmas.

19. The *Trim-Time Bows* are sold exclusively as holiday decorations for wreaths in Berwick's Trim-A-Tree line to retail stores as well as special holiday retailers. These items are sold in the seasonal sections or festive product sections of retail stores. The ultimate purchaser would expect to use the bow as a decoration during Christmas, given that the advertisement on the Trim-Time Bow retail package . . . describes the item as "Home Décor Bow" and suggests to consumers the following uses: "On the Mantelpiece;" "Over a Doorway;" "As a Centerpiece;" and "On a Window."

20. All of the subject bows are designed with two fabric strips that allow the items to be easily tied to wreaths, Christmas trees, or other fixtures as a hanging home ornament. That the bows are not designed with adhesive strips on the reverse-side preclude them from being easily affixed to gifts or packages. All of these bows are packaged on hanging cards with the term "Home Decorating" or with instructions on how to construct (for purposes of the *Perfect Bow*) or display the bow. The cover of Berwick's 2000 catalogue includes a photograph of its bows positioned on a platform, along with a miniature Christmas tree sculpture, several hanging holiday ornaments, poinsettias, and a figure bearing a Christmas theme . . .. These items are marketed as home decorating supplies in the holiday sections of supermarkets, craft stores, or department stores.

21.   These bows are not intended to be used to wrap or decorate packages, because they are designed to be ornaments and big enough to decorate trees, rooms, mantels, wreaths, etc.  Furthermore, they are not ribbons which can easily be tied around a package.  To celebrate the Christmas Holiday, these bows are sold to provide merriment as they decorate the home, churches, storefronts, window displays, and all other areas requiring Christmas cheer.

22.   Since these bows (1) are intended for use, (2) are used as ornaments and decorations during the holidays, and (3) are marketed as such, the subject merchandise should be classified under HTS Heading 9505 as festive articles.

Italics, boldface, and underscoring in original.

In its response, the defendant admits foregoing paragraphs 2, 5, 6, 8, and 10 but denies in sum and substance all of the others.  It is, however, of some moment to emphasize defendant's averments as to the following:

15.  Denies.  Avers that, according to Plaintiff's Exhibit A, the Perfect Bow is "Great For Use On[] Baskets, Christmas Trees, Crafts, Floral Arrangements, Gift Packaging, Home Decor, [and] Wreaths."  Further avers that the Perfect Bow is depicted as a bow on a gift box.

### Holiday Classic Bows

16.  Denies . . ..  Avers that the pages depicting bows in Plaintiff's Exhibit B do not refer to [] any bows as "Holiday Classic Bows."  Further avers that the descriptions and dimensions of the articles depicted in Exhibit B (on the page marked "40") provide that the depicted articles are actually ribbons and not "bows"

as alleged in this paragraph.  Further avers that, based on the item numbers corresponding to the bows depicted, none of the bows depicted in Plaintiff's Exhibit B are the subject of these actions.

17. Denies . . ..  Further avers that the depiction contained on the first page of Plaintiff's Exhibit B merely states "Veltex" and there is no indication that the articles depicted on that page are the articles at issue in these actions.  Admits that retail packages depicted in Plaintiff's Exhibit B state "Home Decorating." . . .

### Trim-Time Bows

18.  Denies . . ..  Avers that the depiction contained in Plaintiff's Exhibit C merely state[s] "Golden Shimmer" and do[es] not state "Trim-Time Bow."  Further avers that there is no indication that the articles depicted in Plaintiff's Exhibit C are the articles at issue in these actions.

19. Denies that the retail packages depicted in Plaintiff's Exhibit C refer to the depicted articles as "Trim-Time Bows"; admits that the retail packages depicted in Plaintiff's Exhibit C state "Home Decorating." . . .

### B

This response has been served and filed in conjunction with a cross-motion for summary judgment that contains defendant's own Additional Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried[4], the most pertinent of which include:

---

[4]  Complete capitalization deleted.

5. Berwick has limited its causes of action to only those imported bows which are in the following colors: red, green, gold[,] silver and tartan plaid . . .. Therefore, it has abandoned its claims regarding all [other] bows contained in the entries.

* * *

6. Berwick has seven product retail divisions for the bows which it manufactures and sells: Christmas Retail, Trim Time Retail, Everyday Retail, Floral Wholesale, Craft Retail, Packaging Wholesale, and Custom. . . . These divisions cross-merchandise and market bows of a variety of materials, colors, and styles, *i.e.*, bows sold in one division are also advertise[d] and sold through other divisions. . . .

7. Berwick's Christmas Retail Division offers product lines, such as Christmas Classic, Brilliance and Ribbon Magic, which sell ribbons and bows for Christmas packaging. . . .

8. Berwick's Trim Time Retail division offers bows for every decorating need and offers in color themes that trend with the home decor market. . . .

9. Berwick's Everyday Retail Division offers creative options for both gift packaging and party decor in a variety of colors, and these bows are similar to the bows in Berwick's Christmas Retail division. . . . Bows sold through this division are used for gift wrap, gift bags, balloons and party supplies. . . .

10. Berwick's Floral Wholesale division supports the floral distributors market. Berwick's Flora-Satin product category is offered through this retail division for every occasion. . . .

11. Berwick's Craft Retail division offers a wide range of bows designed to accessorize any craft project, "regardless of the season." The bows sold to the craft market include Veltex, Flora-Satin (printed and solid), Wraphia, curling ribbon, Perfect Bows, and Curl Swirls. . . .

12. As the world's largest manufacturer and distributor of decorative bows, Berwick sells bows year-round. . . .

13. Bows are decorative articles manufactured, marketed and sold year-round for a variety of purposes. . . .

14. Bows are principally used in connection with gift wrapping/packaging. . . .

15. Bows [are] made from a variety of material and marketed in many colors and patterns through many channels of trade year-round. . . .

16. Bows have a variety of uses, *e.g.*, decorating gifts, houses, rooms, corsages, plants, hanging baskets, floral arrangements, gift wrapping, pews and centerpieces. . . .

17. The bows at issue are manufactured, imported, marketed and sold in different colors.

18. Neither the styles, sizes, colors, nor other characteristics of the imported bows preclude their use as gift wrapping bows and/or at times of the year other than Christmas. . . .

19. None of the commercial papers describe the imported merchandise as being "Holiday Classic Bows."

Citations omitted.


In its response, the plaintiff admits paragraphs 16 and 17 but denies 5, 13-15, and 18. As for the others, the plaintiff:

6. Admits that Defendant's Exhibit 1 speaks for itself. Denies the remaining allegations. Avers that most of Berwick's Christmas bows are marketed during Christmas and in specific catalogs.

7. Admits and avers that the Christmas Retail Division not only sells Christmas packaging but Christmas decorations and ornament-like bows.

8. Admits and avers that Trim Time Bows at issue are designed for use as Christmas decorations.

9. Denies and avers that most of the subject merchandise is not offered in Berwick's Everyday Retail Division for gift wrap, gift bags, balloons, and party supplies. The Perfect Bow may be used for packaging but is principally designed to be used for home or other decor at such festive events as Christmas.

10. Admits and avers that the subject merchandise is not generally sold through the Floral Wholesale Division.

11. Admits and avers that the subject merchandise is not generally sold through the Craft Retail Division.

12. Admits and avers that plaintiff does not sell most of the subject Christmas bows year-round.

19. Admits that the invoices and entry papers do not mention "Holiday Classic Bows." However, avers that all the 1996 and 1997 Christmas Catalogs, as well as the packaging for the subject bows describe some of the imported merchandise as "Holiday Classic Bows."

## II

Both parties contend that the matter at bar can be resolved via summary judgment. See, e.g., Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Memorandum"), p. 8; Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and In Support of Defendant's Cross-Motion for Summary Judgment ("Defendant's Memo-

randum in Opposition"), p. 9.  The court tested this thesis by subjecting them to oral argument.  Alas, upon careful review and reflection, the court cannot concur.  <u>See</u>, <u>e.g.</u>, <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 248 (1986):

> . . . [S]ummary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

Jurisdiction to hear and decide this matter is predicated upon 28 U.S.C. §1581(a) and §2631(a).  The dispositive issue herein is whether plaintiff's bows are *prima facie* classifiable as "festive articles" under HTSUS heading 9505.  If so, the contested classification would be erroneous on its face per Note 2(v)[5] of Chapter 39 and Note 1(t) of Section XI[6], both of which indicate that the tariff provisions thereunder do not cover "[a]rticles of Chapter 95".  <u>See</u> General Rule of Interpretation 1:

> . . . [F]or legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes[.[7]]

---

[5] Note 2(v) was formerly Note 2(u).

[6] Chapter 63 falls thereunder.

[7] "Section and Chapter Notes are not optional interpretive rules, but are statutory law, codified at 19 U.S.C. §1202."  <u>Park B. Smith, Ltd. v. United States</u>, 347 F.3d 922, 926 (Fed.Cir. 2003) (citation omitted).  <u>Cf</u>. <u>Midwest of Cannon Falls, Inc. v. United States</u>, 122 F.3d 1423, 1429 (Fed.Cir. 1997).

A

        To determine whether plaintiff's bows are classifiable

under HTSUS heading 9505, the court must first ascertain the

meaning of that tariff provision.  See, e.g., Rollerblade, Inc.

v. United States, 282 F.3d 1349, 1352 (Fed.Cir. 2002).  That

inquiry is unnecessary herein as the meaning thereof, and more

specifically, the term "festive articles", has been defined by

the Court of Appeals most recently in Russ Berrie & Co. v. United

States, 381 F.3d 1334, 1336 (Fed.Cir. 2004), quoting Park B.

Smith, Ltd. v. United States, 347 F.3d at 927, in turn citing

Midwest of Cannon Falls, Inc. v. United States, 122 F.3d 1423,

1429 (Fed.Cir. 1997), to wit:

>     . . . [C]lassification as a "festive article" under
>     Chapter 95 requires that the article satisfy two crite-
>     ria:  (1) it must be closely associated with a festive
>     occasion and (2) the article is used or displayed prin-
>     cipally during that festive occasion.

In Russ Berrie, the court found that

>     [s]nowmen decorated with holly, ghosts, and witches'
>     and monsters' heads are symbols that are *closely asso-
>     ciated* with the Christmas and Halloween holidays and
>     are *used principally* on those occasions.

381 F.3d at 1336 (emphasis added).  In Park B. Smith, the Federal

Circuit had stated that

>     articles with symbolic content associated with a par-
>     ticular recognized holiday, such as Christmas trees,

> Halloween jack-o-lanterns, or bunnies for Easter, are
> festive articles[,]

but those

> articles that might be associated with a particular
> holiday because of their color schemes, but having no
> symbolic content, such as a red and green plaid, do not
> meet the . . . criteria for festive articles under
> Chapter 95.

347 F.3d 929.

Given this meaning for "festive articles", this court
can move to the second, factual inquiry articulated in Roller-
blade, 282 F.3d at 1352, namely, whether the goods at issue here-
in land within that meaning -- in other words, whether they sat-
isfy the criteria enumerated above.

(1)

In an attempt to satisfy number (1), supra, the plain-
tiff presents three arguments, the first of which is that

> bows possess a historical association with Christmas.
> Symbolically, bows reflect the "spirit of brotherhood,"
> and their use during the Christmas season suggests that
> humankind is "tied together with bonds of goodwill."

Plaintiff's Memorandum, p. 13, quoting Symbols of Christmas,
http://www.ywconnection.com/Holiday/pageHsymbolsofchristmas.html
(last visited March 31, 2006).  This citation to an anonymous,
presumably-personal, website hardly reveals how the "spirit of

brotherhood" is actually bound to Christmas, whether one considers that holiday in the light of either its religious[8] origin or its current commercial significance.

Secondly, the plaintiff claims that "[t]oday, the bow is as ubiquitous a symbol of Christmas as the greenery it decorates". Plaintiff's Memorandum, p. 13. This broad generalization seems to derive solely from the following sentence: "Indeed, it is rare to see a Christmas wreath or garland without a large bow." Id. (citations omitted). While this could be true, the relevance thereof seems to attach to the second requirement--that the merchandise be used or displayed principally during a festive occasion. See Russ Berrie & Co. v. United States, supra.

Third, the plaintiff argues that "some of the *Holiday Classic* and *Trim-Time* bows display traditional Christmas symbols, such as candy-cane stripes and holly"[9], to which end it also provides Physical Exhibit #1 (Trim-Time)[10] depicting what appear to be holly branches. For support, counsel reference paragraphs 7

---

[8] See, e.g., Skoros v. City of New York, 437 F.3d 1, 9-10, 28-29 & n. 24, 51-52 (2d Cir. 2006).

[9] Plaintiff's Memorandum, p. 12, citing Tim Shearer Affirmation, paras. 7, 9. See also Russ Berrie & Co. v. United States, 381 F.3d 1334, 1336 (Fed.Cir. 2004).

[10] Also displayed at the podium during oral argument.

and 9 of the affirmation of Tim Shearer.  Neither, however, sub-stantiates that any of the bows at issue "displays traditional Christmas symbols".  Rather, paragraph 9, which discusses the physical characteristics of Holiday Classic bows, merely states that they **"may** feature patterns such as candy-cane stripes, holly, etc.", while number 7 makes no mention of candy-cane stripes, holly, or any other alleged traditional Christmas sym-bol.  Emphasis added.  <u>Cf</u>. Defendant's Exhibit 10, Supplemental Declaration of Joan Mazzola, para. 5:

> . . . Physical Exhibit #1 . . . has what appears to be a textile bow with a holly on it.  However, I was not aware that any of the bows at issue here contained holly on them.

Nor does plaintiff's Attachment A, listing each bow individu-ally by protest, entry, category, and item number, support such a conclusion.

Despite this inconsistency, and the seemingly tenuous evidence produced by the plaintiff as to the bows' being symbols of Christmas, at this stage in the action(s) the court cannot weigh that evidence or make credibility determinations with re-gard thereto.  <u>See</u>, <u>e.g.</u>, <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. at 255.

(2)


Should the plaintiff be able to substantiate that "closely associated" requirement at trial, it still must satisfy the second -- that its goods are used or displayed principally[11], in other words, predominantly[12] or ordinarily[13], as festive decorations during the Christmas holiday.  Cf. Plaintiff's Memorandum, pp. 14, 17-23; Plaintiff's Statement of Material Facts Not in Dispute, paras. 12-22.  Here, this contention is not without challenge.  Defendant's position is that the bows at issue are

_____

[11] See Additional U.S. Rule of Interpretation 1(a):

. . . [A] tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is principal use[.]

Principal use has been defined as a use "which exceeds any other single use".  Lenox Collections v. United States, 20 CIT 194, 196 (1996) (italics in original).

[12] See Warner-Lambert Co. v. United States, 28 CIT ___, ___, 341 F.Supp.2d 1272, 1281 (2004), aff'd, 425 F.3d 1381 (Fed.Cir. 2005), quoting Len-Ron Mfg. Co. v. United States, 334 F.3d 1304, 1311 (Fed.Cir. 2003).

[13] See Primal Lite, Inc. v. United States, 182 F.3d 1362, 1364 (Fed.Cir. 1999).

principally used in connection with gift-wrapping.[14]

In support of their respective positions and in accordance with USCIT Rule 56(e), each party has submitted affidavits attesting to the principal use of the bows at issue.[15] Those affidavits primarily focus on the factors outlined in United States v. Carborundum Co., 63 CCPA 98, 102, C.A.D. 1172, 536 F.2d 373, 377, cert. denied, 429 U.S. 979 (1976). See Plaintiff's Memorandum, pp. 17-23; Defendant's Memorandum in Opposition, pp. 20-26. Having studied those affidavits, namely, of Alice Wong and Joan Mazzola for the defendant; and of Tim Shearer, Bruce Kerr, and Stella Troman for the plaintiff, the

---

[14] See Defendant's Memorandum in Opposition, pp. 19-26; Defendant's Additional Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried, paras. 7, 9, 13-14, 18; Defendant's Exhibit 10, Supplemental Declaration of Joan Mazzola, para. 6:

> . . . Bows are decorative articles used as a part of packaging, i.e., gift-wrapping. For example, tissue paper is used in packaging as decoration and/or to protect the packaged article, but is not itself a package. Plastic sheets, which are often used in place of tissue paper, are likewise not a package but are used as part of the packaging system to protect the packaged article. Similarly, bows are not themselves packages, but are used in the process of packaging, including gift-wrapping.

[15] Their positions were also well articulated by counsel at oral argument.

court is unable to reconcile the competing statements[16] contained therein without a trial where the aforementioned affiants can be subjected to cross-examination, "which has been said to be the surest test of truth and a better security than the oath." Hanover Ins. Co. v. United States, 25 CIT 447, 458 (2001).

## III

In view of the foregoing, the parties' cross-motions for summary judgment must be, and they hereby are, denied.  Counsel are directed to confer and propose to the court on or before April 28, 2006 a schedule for trial of those issue(s) of fact

---

[16]  Compare, e.g., Defendant's Exhibit 10, Supplemental Declaration of Joan Mazzola, para. 8:

> . . . Based on the advertising and sales practices of . . . retailers, it is my opinion that bows, including the perfect bows and other bows at issue in this action . . . belong to a class or kind of bow that is principally used for packaging, including gift-wrapping[,]

with Plaintiff's Memorandum in Opposition, Affirmation of Bruce Kerr, para. 13:

> . . . [T]hese bows are sold principally during the Christmas holiday season to decorate all manner of public and private spaces, including homes, churches, and storefronts.

which are not already agreed to herein and which cannot be stipu-

lated to in a pretrial order.

     So ordered.

Dated:  New York, New York
       March 31, 2006

                            Thomas J. Aquilino, Jr.
                                 Senior Judge